******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

VALLEY NATIONAL BANK *v.*
STEVEN MARCANO
(AC 38497)

DiPentima, C. J., and Sheldon and Harper, Js.

*Argued February 16—officially released June 27, 2017*

(Appeal from Superior Court, judicial district of New
Britain, Swienton, J.)

*David L. Gussak*, for the appellant (defendant).

*Miguel A. Almodóvar*, for the appellee (plaintiff).

*Opinion*

HARPER, J. The defendant, Steven Marcano, appeals from the judgment rendered against him, after a court trial, for breach of his obligation under a personal guarantee of a $250,000 line of credit extended to My Little Star Baby Products, Inc. (My Little Star), by the plaintiff, Valley National Bank, as successor in interest to Park Avenue Bank (Valley National). The defendant challenges the trial court's findings that (1) Valley National established a proper chain of title regarding its ownership of the promissory note originally executed and personally guaranteed by the defendant to Park Avenue Bank (Park Avenue), thereby giving Valley National standing to bring an action on the guarantee of payment of that note and (2) Valley National submitted sufficient evidence to accurately establish the loan balance it claimed was owed by the defendant.[1] We affirm the judgment of the trial court.

In its September 17, 2015 memorandum of decision, the court found the following facts. "The defendant was one of the founders of the entity known as [My Little Star], and was the president of the company when it applied for a business line of credit with [Park Avenue] in New York. The loan application was approved, and [the defendant] executed the business loan agreement, commercial security agreement, corporate resolution authorizing the borrowing, as well as the promissory note and [personal] guarantee. . . . The promissory note which secured the line of credit had a maturity date of May 27, 2009, when all sums drawn upon the line of credit along with interest were to be paid in full without demand.

"The personal guarantee signed by the defendant secured My Little Star's obligation to [Park Avenue]. After approval, My Little Star made drawdowns on the line of credit through drawdown requests made by the defendant. The total amount of the drawdowns was $248,723.06.

"At some point, [Park Avenue] was seized by the [Federal Deposit Insurance Corporation (FDIC)], and [Valley National] purchased the assets of [Park Avenue] from the FDIC as receiver. [The plaintiff's] Exhibit 9, which is a Purchase and Assumption Agreement, indicates that the FDIC transferred the defendant's obligation to [Park Avenue] to [Valley National]. . . .

"The defendant has made no payments on the obligation of My Little Star as a personal guarantor. The current amount due as of July 22, 2015, is $328,009.28, of which $248,723.06 is principal, and $79,286.22 is interest, with a per diem of $36.27." (Citation omitted; footnote omitted.) The plaintiff brought an action to enforce the debt owed by the defendant as the personal guarantor of the loan. The trial court found in favor of the plaintiff and rendered judgment against the defendant

in the amount of $330,040.40, which represented a principal balance of $248,723.06, and interest in the amount of $81,317.34. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim is that the court improperly found that Valley National had established a proper chain of title regarding its ownership of the promissory note, which was originally executed and personally guaranteed by the defendant to Park Avenue, thereby giving Valley National standing[2] to bring an action on the guarantee of payment of that note. Specifically, the defendant argues that the plaintiff lacks standing to bring an action to enforce the defendant's personal guarantee on the promissory note for the following reasons: (1) none of the loan documents is endorsed, either in blank or specially, from Park Avenue to Valley National; (2) the plaintiff cannot prove that it is a non-holder with the rights of a holder because the plaintiff's witness, Michael Robinson, was not an employee of the plaintiff at the time that it acquired the assets of Park Avenue, nor was he involved in the transaction between the FDIC and the plaintiff; and (3) the purchase and assumption agreement does not specifically identify the My Little Star loan as an asset acquired by the plaintiff from the FDIC. We disagree and conclude that the court properly determined that Valley National had standing to pursue its claim against the defendant for his personal guarantee on the line of credit.

We first set forth our standard of review. "The issue of standing implicates [the] court's subject matter jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Because standing implicates the court's subject matter jurisdiction, the plaintiff ultimately bears the burden of establishing standing. . . .

"Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, [the standard of] review is plenary. . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Citations omitted; internal quotation marks omitted.) *JPMorgan Chase Bank, National Assn.* v. *Simoulidis*, 161 Conn. App. 133, 142, 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016).

A

The defendant first argues that, because the note is

not specially endorsed to the plaintiff or endorsed in blank, the plaintiff lacks standing to enforce its acquired rights under the note and other loan documents. We disagree.

In Connecticut, a party may enforce a note pursuant to the Uniform Commercial Code (UCC), codified at General Statutes § 42a-1-101 et seq. *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138, 146, 125 A.3d 262 (2015). General Statutes § 42a-3-301 provides in relevant part that a "[p]erson entitled to enforce an instrument means . . . the holder of the instrument[3] . . . [or] a nonholder in possession of the instrument who has the rights of a holder . . . ." (Footnote added; internal quotation marks omitted.) "The UCC's official comment underscores that a person entitled to enforce an instrument . . . is not limited to holders. . . . A nonholder in possession of an instrument includes a person that acquired rights of a holder . . . under [§ 42a-3-203 (a)]. . . . Under § 42a-3-203 (b), [t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument . . . . An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument. General Statutes § 42a-3-203 (a). . . . Accordingly, a note that is unendorsed still can be transferred to a third party. Although that third party technically is not a holder of the note, the third party nevertheless acquires the right to enforce the note so long as that was the intent of the transferor." (Citation omitted; internal quotation marks omitted.) *Berkshire Bank* v. *Hartford Club*, 158 Conn. App. 705, 712, 120 A.3d 544, cert. denied, 319 Conn. 925, 125 A.3d 200 (2015).

In this case, the plaintiff presented the court with the loan documents and the purchase and assumption agreement. Section 3.1 of that agreement states in relevant part: "[The plaintiff] hereby purchases from the [FDIC], and the [FDIC] hereby sells, assigns, transfers, conveys, and delivers to the [plaintiff], *all right, title and interest of the* [*FDIC*] *in and to all of the assets* (real, personal and mixed, wherever located and however acquired) including all subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of [Park Avenue] *whether or not reflected on the books of* [*Park Avenue*] *as of Bank Closing*." (Emphasis added.) The court, in its findings of fact, found that the purchase and assumption agreement indicated that the "FDIC transferred the defendant's obligation to [Park Avenue] to [Valley National]." We agree with the court that, by virtue of the express language in Section 3.1 of the March 12, 2010 purchase and assumption agreement, the plaintiff received from the FDIC, on behalf of Park Avenue, "all right, title and interest . . . in and to all of the assets . . . whether or not reflected on the books of [Park

Avenue] as of Bank Closing."[4] We also conclude that when the FDIC transferred to it "all" of Park Avenue's assets, the plaintiff became a nonholder with the rights of a holder.

Our decision in *Berkshire Bank* makes clear that an unendorsed note can still be transferred and enforced, and that although a third party technically is not a holder of the note, that third party nevertheless acquires the right to enforce the note so long as that was the intent of the transferor. *Berkshire Bank* v. *Hartford Club*, supra, 158 Conn. App. 712. Therefore, the defendant's first argument, that the note is unenforceable because it is not specially endorsed to the plaintiff or endorsed in blank, fails because the note was not rendered unenforceable by the lack of such endorsements.

### B

Similarly, the defendant's second argument that the plaintiff could not prove that it was a nonholder that had acquired the rights of a holder fails because, although the plaintiff is not technically a holder of the note by virtue of its third-party status, it demonstrated that it acquired the right to enforce that note by way of the purchase and assumption agreement. That agreement evidenced the intent of the FDIC to transfer to the plaintiff Park Avenue's assets. The defendant also argues that the plaintiff cannot prove that it is a nonholder with the rights of a holder because the plaintiff's witness, Robinson, was not an employee of the plaintiff at the time that the plaintiff acquired the assets of Park Avenue, nor was he involved in the transaction between the FDIC and the plaintiff. This argument fails because Robinson's testimony was not offered to authenticate the loan documents and the purchase and assumption agreement as business records. Those exhibits already had been admitted. Rather, Robinson testified as to what information he relied on to reach the total sum owed under the defendant's contractual obligation with Park Avenue. See part II of this opinion. Moreover, a custodian or supervisor of business records, such as Robinson, need not always have made the record or seen it made in order to testify to its authenticity. Therefore, the defendant's argument that Robinson lacked personal knowledge of the documents at issue cannot succeed. See *First Union National Bank* v. *Woermer*, 92 Conn. App. 696, 708, 887 A.2d 893 (2005), cert. denied, 277 Conn. 914, 895 A.2d 788 (2006).

### C

The defendant's final argument is that the plaintiff could not prove chain of title because the purchase and assumption agreement does not specifically identify the My Little Star loan as an acquired asset. Specifically, he argues that Robinson mistakenly relied on Section 3.1 of the purchase and assumption agreement to sup-

port his contention that the My Little Star loan was transferred to the plaintiff because nowhere in the agreement is there a "listing, identification, enumeration, or description as to what the [Park Avenue] assets consist of, and whether or not they include the [My Little Star] loan." Schedule 3.1 of the purchase and assumption agreement provides, inter alia, that the list of assets acquired "may not include all loans and assets" and that "[t]he list may be replaced with a more accurate list post closing." Paragraph (d) of Schedule 3.2, entitled "Purchase Price of Assets or assets," reads "Loans: Book Value." The agreement defines "loans," in relevant part, to mean "revolving commercial lines of credit," such as the loan at issue.

On the basis of this evidence, we agree with the court's conclusion that the plaintiff had "provided the necessary documentation to establish that [Valley National] is the successor in interest" to the FDIC as receiver for Park Avenue and, thus, had standing to prosecute the present action. Accordingly, we reject the defendant's first claim.

II

The defendant's second claim is that the trial court erred when it determined that Valley National had submitted sufficient evidence from which the outstanding loan balance could be accurately established. Specifically, the defendant argues that he did not create some of the exhibits entered by the plaintiff to establish the debt owed, and that the testimony of Robinson was not sufficient to establish an accurate calculation of the outstanding debt. We disagree and conclude that the trial court's findings as to damages are supported by sufficient evidence and, thus, are not clearly erroneous.

The following additional facts are relevant to our resolution of the defendant's claim. At trial, the defendant testified that his signature was on all of the loan documents, and admitted that his signature and a loan number matching the same loan number on the promissory note was on most of the drawdown requests, listed as plaintiff's exhibits ten through eighteen.[5] The plaintiff presented testimony from Robinson, a loan workout officer employed by Valley National, to establish the total debt owed. Robinson testified that, as the loan officer assigned to the loan at issue, he was familiar with the file and that Valley National was the current holder of the loan. He also testified that Valley National became holder of the loan when it purchased, by way of a purchase and assumption agreement, the assets of Park Avenue from the FDIC as receiver. In addition to the note and other loan documents, Robinson was asked to identify and testify about documents that had been admitted into evidence, over the defendant's objections, as plaintiff's exhibits ten through eighteen. Robinson testified that these exhibits were internal transfer memoranda that documented requested and

transferred funds from Park Avenue to My Little Star. Robinson testified that when he calculated the balance of the loan, he relied on the Park Avenue loan history, admitted as the plaintiff's exhibit twenty-one, and not the internal transfer memoranda. According to Robinson, the loan history showed a principal balance in the amount of $248,723.06, and that, as of July 22, 2015, the total interest that had accrued on the principal balance was $79,286.22. He further testified that the per diem amount, under the terms of the note, was $36.27 under the note rate of 5.25 percent.

On the basis of such evidence, the trial court found that the defendant had made no payments on the loan obligation as the personal guarantor. It further found that the plaintiff had met its burden of establishing the sum of its alleged debts, and entered judgment against the defendant in the amount of $330,040.40, which represented a principal balance of $248,723.06 and interest as of September 17, 2015, in the amount of $81,317.34.

"With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . ." (Internal quotation marks omitted.) *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003).

"It is well established that damages are a necessary element for a breach of contract action. . . . The trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Thus, [t]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." (Citation omitted; internal quotation marks omitted.) *Milford Bank* v. *Phoenix Contracting Group, Inc.*, 143 Conn. App. 519, 524–25, 72 A.3d 55 (2013).

In the present case, the trial court's award of damages is consistent with the figures provided in exhibit twenty-one and as testified to by Robinson, with the exception of the accrued interest to date, which was updated to reflect the current payoff amount. Although Robinson testified that he did not rely on the drawdown requests, marked as the plaintiff's exhibits ten through eighteen, in arriving at his conclusion as to the total amount owed, such testimony did not undermine Robinson's

testimony that exhibit twenty-one, the Park Avenue loan history, accurately reflected the financial transactions between Park Avenue and My Little Star. Further, although the defendant testified that he did not authorize the amounts in the drawdown requests, he presented no evidence from which the court reasonably could have concluded that the amounts at issue had not been disbursed to My Little Star. The Park Avenue loan history reflected in exhibit twenty-one, the defendant's testimony admitting to his signatures on each of the loan documents, and the testimony of Robinson, provided sufficient evidence of the debt owed by My Little Star to the plaintiff at the time of trial, and therefore of the amount owed by the defendant as the personal guarantor of My Little Star's debt. The award of damages is fully supported by the record before us, and, thus, the court's finding that the plaintiff had submitted sufficient evidence from which the outstanding loan balance could be accurately established is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant raises in his brief a third claim that the trial court erred "in entering judgment against" him, this claim is, in substance, a reiteration of the first two claims. The resolution of the defendant's first two claims renders his third claim meritless, and thus, we need not address it here.

[2] The defendant contends in his brief: "[The] plaintiff, based upon the evidence offered, lacked standing to maintain its claim." The plaintiff argues that, because the trial court made a factual finding as to Valley National's ownership of the loan documents, we must review the defendant's claim under the clearly erroneous standard. In substance, however, the defendant's first claim challenges Valley National's standing, and, therefore, the standard of review is plenary. See *JPMorgan Chase Bank, National Assn.* v. *Simoulidis*, 161 Conn. App. 133, 142, 126 A.3d 1098 (2015), cert. denied, 320 Conn. 913, 130 A.3d 266 (2016).

[3] " 'Holder' means: (A) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; (B) The person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or (C) The person in control of a negotiable electronic document of title." General Statutes § 42a-1-201 (b) (21).

[4] The defendant challenges the transfer of the loan from Park Avenue to the FDIC. The court found that "[a]t some point, [Park Avenue] was seized by the FDIC." The record supports this finding, and therefore we also conclude that Park Avenue's assets, including the defendant's loan, were transferred to the FDIC as receiver. Moreover, the defendant testified that Park Avenue went out of business and that it was seized by the FDIC. The defendant's challenge to that transfer fails.

[5] The defendant objected to the admission of the plaintiff's exhibit fourteen, a drawdown request dated July 23, 2008, because he could not confirm a signature. He did confirm, however, that the loan number contained on the drawdown request was the same loan number as contained in the promissory note. The defendant also testified that he believed the total amount drawn down on the loan at issue was $40,000 to $50,000, and that his accounting firm also had authority to request funds from the loan's line of credit. The court ultimately overruled the defendant's objection. In its memorandum of decision, the court determined that "[a]lthough [the defendant] testified that his accountants had [the] authority to make these drawdowns, and therefore he was unaware of the drawdowns, there was no credible evidence to support this claim."