******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SEVEN OAKS ENTERPRISES, L.P., ET AL. *v.*
SHERRY DEVITO ET AL.
(AC 38325)

Lavine, Alvord and Beach, Js.

*Syllabus*

The plaintiffs, E Co., a limited partnership, and M Co., brought this action for, inter alia, breach of contract against the defendant D in connection with a promissory note and a management contract arising from the purchase of a limited liability company, L Co., by D from E Co. Payment for the purchase consisted of a certain sum in cash and the remaining $1.325 million by a promissory note. D executed the note both as manager of L Co. and individually. The purchase agreement was executed by D individually and by E Co., and C, who was the president and managing member of M Co., signed the purchase agreement on behalf of M Co., which in turn acted in its capacity of E Co.'s general partner. D and C also personally executed a management contract, which was attached to and expressly incorporated into the purchase agreement, and which included provisions that C was not to be removed as comanager so long as any debt was owed to E Co., and that C was to be compensated for his services as comanager. D subsequently unilaterally executed amendments to the operating agreement of L Co., which removed C as comanager and provided no compensation to C. D did not pay any of the $1.325 million owed on the note or anything to C for compensation under the management contract, and the plaintiffs subsequently brought claims for, inter alia, breach of contract regarding D's failure to make payments on the note, breach of the management contract and breach of the implied covenant of good faith and fair dealing. Thereafter, E Co. assigned to M Co. any and all claims, rights, and title to any and all defaulted loans and damages related to the sale of L Co. During a trial before a jury, the plaintiffs introduced a copy of the note into evidence, rather than the original. The jury returned a verdict in favor of the plaintiffs and awarded them $1.325 million in damages. The trial court denied D's motions to set aside the verdict and for judgment notwithstanding the verdict, and rendered judgment in accordance with the verdict, from which D appealed to this court. On appeal, D claimed, inter alia, that the plaintiffs did not have the right to enforce the note because M Co. could not satisfy the requirements of the statutory (§ 42a-3-309) provision governing the enforcement of lost, destroyed, or stolen instruments. *Held*:

1. The trial court erred in denying the motions to set aside the verdict and for judgment notwithstanding the verdict as to the plaintiffs' claim that D breached the contract by failing to make payments on the note, as the plaintiffs were not entitled to enforce the note at the time of trial:

   a. E Co. lacked the ability to enforce the note after it assigned the note to M Co. approximately one year after the present action was commenced; although E Co., which was a party to both the note and the purchase agreement, was clearly the only party entitled to enforce the note at the time the present action was commenced and prior to the transfer of the note, E Co.'s assignment of the note to M Co. extinguished all rights E Co. had to enforce the note.

   b. M Co., which was neither a holder nor a nonholder in possession, did not have the power to enforce the note because it could not satisfy the requirements of § 42a-3-309, as it was not in possession of the note when it was lost: the plain language of that statute compelled the conclusion that the only person who can enforce a note is the person in possession of that note when it was lost, the plaintiffs' public policy arguments were unavailing in light of the clear language of § 42a-3-309, and the common law of assignments did not displace the clear provisions of § 42a-3-309 because that statute was directly applicable to the situation underlying the present case and the legislature did not act to revise that statute, which was clear and unambiguous; moreover, in the present case, there was no evidence presented from which the jury reasonably could have inferred that the note was lost while in M Co.'s possession,

and the jury found, instead, that the note was lost while in the possession of E Co., which then assigned the note to M Co.

2. D could not prevail on her claim that the trial court abused its discretion in denying her motion for judgment notwithstanding the verdict and in refusing to set aside the verdict in favor of the plaintiffs as to their claims of breach regarding the management contract, which was based on her assertion that neither plaintiff had a right to enforce the management contract: E Co. was the only party that could enforce the management contract, which was signed by C only on the plaintiffs' side and was expressly incorporated into the purchase agreement, to which E Co., but not M Co., was a party, as the note, which was part of the overall purchase transaction, was issued to E Co. but not to M Co., and the assignment, which was signed by C only, did not have the effect of transferring to M Co. the ability to enforce the terms of the management contract because the management contract stated that no assignment could be effected without the prior written consent of D; moreover, D having abandoned her claim in the trial court that there was insufficient evidence to support the claims of damages regarding the management contract, her claim on appeal that the alleged breaches did not cause any loss to the plaintiffs was not reviewable, and because the jury found in favor of the plaintiffs on more than one count but awarded only a total amount of $1.325 million in undifferentiated damages, and no special interrogatories were submitted showing which road the jury went down, this court presumed that the jury found damages of $1.325 million, whether based on breach of the note or breach of the management contract, and the verdict had to stand.

Argued January 29—officially released October 23, 2018

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the named defendant filed a counterclaim; thereafter, the court, *Hon. Taggart D. Adams*, judge trial referee, denied the motion to dismiss filed by the defendant Robert DePaolo; subsequently, the court, *Hon. Taggart D. Adams*, judge trial referee, denied the defendants' motion to reargue; thereafter, the action was withdrawn as to the defendant Robert DePaolo; subsequently, the matter was tried to the jury before *Lee, J.*; verdict for the plaintiffs on the complaint and the counterclaim; thereafter, the court, *Lee, J.*, denied the named defendant's motions to set aside the verdict and for judgment notwithstanding the verdict, and rendered judgment in accordance with the verdict, from which the named defendant appealed to this court. *Reversed in part; judgment directed*.

*Ridgely Whitmore Brown*, with whom, on the brief, was *Benjamin Gershberg*, for the appellant (named defendant).

*Ryan O'Neill*, with whom, on the brief, was *Mark Sherman*, for the appellees (plaintiffs).

*Opinion*

BEACH, J. The defendant Sherri DeVito[1] appeals from the judgment of the trial court rendered, after a jury trial, in favor of the plaintiffs, Seven Oaks Enterprises, L.P. (SOE), and Seven Oaks Management Corporation (SOM), on two counts alleging breach of contract and one count alleging breach of the implied covenant of good faith and fair dealing. The jury awarded $1.325 million in damages to the plaintiffs. On appeal, the defendant claims that the trial court (1) abused its discretion in denying the defendant's motion to set aside the verdict and her motion for judgment notwithstanding the verdict because the plaintiffs did not produce the original note at trial, there was insufficient evidence that the note was lost, and the plaintiffs did not have the right to enforce the note; (2) incorrectly instructed the jury regarding SOM's right to enforce the note; (3) lacked subject matter jurisdiction over SOE because it did not have the legal capacity to commence and continue the action; and (4) abused its discretion in denying her motion for judgment notwithstanding the verdict and in refusing to set aside the verdict because neither plaintiff had a right to enforce the management contract, the alleged breaches did not cause any loss to the plaintiffs, and the jury could not determine with reasonable certainty the amount of damages sustained. We affirm the judgment as to SOE's claim regarding breach of the management contract and reverse as to SOE's claim of breach of contract regarding the note and all of SOM's claims.

The following facts, which the jury reasonably could have found or are undisputed, and procedural history are pertinent to our decision. This dispute concerns a note and a management contract arising from the purchase of a limited liability company by the defendant. Prior to the events in issue, Murray Chodos had purchased a residential property located at 516 Round Hill Road, Greenwich, in 1999. A limited liability company, 516, LLC, had been created to own the property, and SOE was the sole owner of 516, LLC.

SOM was the general partner of SOE and Chodos was the president and managing member of SOM. Chodos met the defendant and her husband in late 2005 or early 2006. Chodos helped the defendant and her husband obtain life insurance policies and referred the defendant to an attorney, who could draft trusts for their children. In October, 2006, Chodos agreed to sell 516, LLC, to the defendant. The defendant purchased 516, LLC, from SOE for $4 million. Payment consisted of $2.675 million in cash by wire transfer and the remaining $1.325 million by a promissory note (note), which listed property located at 516 Round Hill Road as collateral. The purchase agreement was executed by the defendant individually and by SOE. Chodos signed the purchase agreement on behalf of SOM, which in turn acted in its

capacity as SOE's general partner. On the defendant's side, the note was executed by the defendant both as manager of 516, LLC, and individually.

In addition, the purchase agreement provided that until the note was paid, Chodos was to be the comanager of 516, LLC, pursuant to a management contract, which was attached to and expressly incorporated into the purchase agreement. The defendant and Chodos personally executed the management contract, which included provisions that Chodos was not to be removed as comanager so long as any debt was owed to SOE, that Chodos was to be compensated for his services as comanager, and that he would have all powers available to the manager under the operating agreement of 516, LLC.

On April 4, 2008, the defendant, unknown to Chodos or to the plaintiffs, unilaterally executed an amendment to the operating agreement of 516, LLC. The amendment removed Chodos as comanager, provided Chodos with no voting rights, and provided no compensation to Chodos. On May 1, 2008, the defendant executed another amendment to the operating agreement. This amendment recognized a mortgage of $365,000 in favor of Allied International Fund, Inc. (Allied), and placed the Allied security interest above SOE's note in priority.

The defendant did not pay any of the $1.325 million owed on the note or anything to Chodos for compensation under the management contract. In April, 2010, the plaintiffs initiated this action against the defendant. On December 31, 2011, SOE executed a "Bill of Sale and Assignment" (assignment), which assigned to SOM "any and all claims, rights and title to any and all defaulted loans and damages relating to the sale of 516, LLC." The plaintiffs alleged four counts: (1) breach of contract for the defendant's breach of the management contract; (2) breach of the implied covenant of good faith and fair dealing for the defendant's bad faith breaches of the management contract; (3) breach of contract regarding the defendant's failure to make payments on the note; and (4) reckless and wanton misconduct by the defendant. The defendant raised several special defenses and counterclaims. There are no claims on appeal regarding the special defenses and counterclaims.

The trial commenced on January 23, 2015. The plaintiffs withdrew their claim of reckless and wanton misconduct before the jury was charged. On February 6, 2015, the jury returned a verdict in favor of the plaintiffs on all three remaining counts, as well as the defendant's special defenses and counterclaims. It awarded the plaintiffs $1.325 million in damages. The verdict did not attribute damages to any specific count or counts.[2] At the same time, the jury provided answers to a set of written jury interrogatories. On February 23, 2015, the defendant filed a motion for judgment notwithstanding

the verdict and a motion to set aside the verdict, which motions the court denied on August 21, 2015. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the trial court abused its discretion in denying her motion to set aside the verdict and her motion for judgment notwithstanding the verdict because the plaintiffs did not produce the original note at trial, there was insufficient evidence that the note was lost, and the plaintiffs did not have the right to enforce the note; that the court incorrectly instructed the jury regarding SOM's right to enforce the note; that the court lacked subject matter jurisdiction over SOE because SOE did not have the legal capacity to commence and continue the action; and that the court abused its discretion in denying her motion for judgment notwithstanding the verdict and in refusing to set aside the verdict because neither plaintiff had a right to enforce the management contract, the alleged breaches did not cause any loss to the plaintiffs, and the jury could not have determined with reasonable certainty the amount of damages required. We consider the claims in a different order for the purpose of clarity, and, in light of our conclusions, it is not necessary to address several of them.

We begin with our standard of review. "The proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done. . . . [T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror . . . but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did. . . . In reviewing the action of the trial court in denying [or granting a motion] . . . to set aside the verdict, our primary concern is to determine whether the court abused its discretion . . . ." (Internal quotation marks omitted.) *Rendahl* v. *Peluso*, 173 Conn. App. 66, 94–95, 162 A.3d 1 (2017).

"The standards for appellate review of a directed verdict are well settled. Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision [to deny the defendant's motion for a directed verdict] we must consider the evidence in the light most favorable to the plaintiff. . . . Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven

. . . it may not resort to mere conjecture and speculation. . . . A directed verdict is justified if . . . the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. . . . The foregoing standard of review also governs the trial court's denial of the defendant's motion for judgment notwithstanding the verdict because that motion is not a new motion, but [is] the renewal of [the previous] motion for a directed verdict." (Citation omitted; internal quotation marks omitted.) *Bagley* v. *Adel Wiggins Group*, 327 Conn. 89, 102, 171 A.3d 432 (2017).

I

We first consider various issues regarding the third count of the operative complaint, which alleged nonpayment of the note. The jury indicated in its answers to interrogatories that it had found that SOE and the defendant originally had been the parties to the note, that SOE possessed the note when it was lost, that the note nonetheless had effectively been assigned to SOM, and that the defendant failed to make payments on the note. A note, of course, is a form of contract, and principles of contract construction are used to interpret its language. *Federal National Mortgage Assn.* v. *Bridgeport Portfolio, LLC*, 150 Conn. App. 610, 620, 92 A.3d 966, cert. denied, 312 Conn. 926, 95 A.3d 523 (2014). "The standard of review for contract interpretation is well established. Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [when] there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Internal quotation marks omitted.) *Meeker* v. *Mahon*, 167 Conn. App. 627, 632, 143 A.3d 1193 (2016). "In ascertaining the contractual rights and obligations of the parties, we seek to effectuate their intent, which is derived from the language employed in the contract, taking into consideration the circumstances of the parties and the transaction. . . . We accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract." (Internal quotation marks omitted.) *Welch* v. *Stonybrook Gardens Cooperative, Inc.*, 158 Conn. App. 185, 197, 118 A.3d 675, cert. denied, 318 Conn. 905, 122 A.3d 634 (2015). "Furthermore, [i]n giving meaning to the language of a contract, we presume that the parties did not intend to create an absurd result." (Internal quotation marks omitted.) *South End Plaza Assn., Inc.* v. *Cote*, 52 Conn. App. 374, 378, 727 A.2d 231 (1999).

A

Prior to the transfer of the note, which occurred after this action was initiated, SOE was clearly entitled to enforce the note, as the parties to the purchase agreement, which referenced the note, were the defen-

dant and SOE,[3] and the parties to the note were, as lender, SOE, and, as borrowers, 516, LLC, the defendant, and a guarantor.[4] Prior to the transfer of the note, then, SOE[5] was the only plaintiff able to enforce the note. The plaintiffs do not claim to the contrary.

Approximately one year after the action was commenced, SOE transferred the note to SOM. The next question is whether SOE, SOM, or both entities retained the power to enforce the note. The assignment provided in pertinent part that SOE "does hereby grant, convey, sell, assign, and transfer over to [SOM] all [SOE's] right, title, and interest in and to . . . any and all claims, rights and title to any and all defaulted loans and damages relating to the sale of 516, LLC." The note was referenced in the purchase agreement, and the note itself referenced 516, LLC. Where no interest in the assigned property is retained or the assignment is otherwise qualified, the assignment extinguishes all of the assignor's rights in the assigned matter. *Bozelko* v. *Milici*, 139 Conn. App. 536, 539, 57 A.3d 762 (2012), cert. denied, 308 Conn. 914, 61 A.3d 1101 (2013). The first paragraph of the note specified that the defendant "acknowledges that [SOE] may transfer this [n]ote . . . ." The assignment clearly stated that SOE was assigning its "claims, rights and title to any and all defaulted loans and damages relating to the sale of 516, LLC." SOE's assignment of the note to SOM extinguished all rights SOE had to enforce the note. Therefore, from December 31, 2011, onward, SOE lacked the ability to enforce the note.[6]

B

The jury reported in its answers to interrogatories that SOE transferred the note to SOM, and apparently concluded that SOM was entitled to enforce the note. The trial court determined, in its memorandum of decision dated August 21, 2015, on the defendant's motion for judgment notwithstanding the verdict, that "[t]here was sufficient evidence for the jury to have found that, in accord with General Statutes § 42a-3-309, SOE was in possession of the note when it was lost, its whereabouts are unknown, and the entity is entitled to enforce the note. The jury further found that SOE transferred the right to enforce the note to SOM. Again, the jury could have reasonably and legally reached the conclusion that the plaintiffs were in possession of the note, and entitled to enforce it despite failing to produce the original. The defendant has not submitted evidence to the contrary."[7] (Footnote omitted.)

The plaintiffs argue that the verdict was proper, in light of the jury's findings, and supported by the evidence, because the note was lost while in the possession of SOE, and that SOE assigned all rights under the note to SOM.[8] The defendant claims that SOM did not have the power to enforce the note because it could not satisfy the requirements of § 42a-3-309, the provision

for the enforcement of lost, destroyed, or stolen instruments under article 3 of the Uniform Commercial Code (UCC). We agree with the defendant.

Our analysis of the UCC involves questions of statutory interpretation over which our review is plenary. *W & D Acquisition, LLC* v. *First Union National Bank*, 262 Conn. 704, 709, 817 A.2d 91 (2003). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, [we first] consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Mayer* v. *Historic District Commission*, 325 Conn. 765, 774–75, 160 A.3d 333 (2017).

Article 3 of the UCC governs negotiable instruments, including notes. See General Statutes § 42a-3-102; see also *Valley National Bank* v. *Marcano*, 174 Conn. App. 206, 211, 166 A.3d 80 (2017). To determine whether SOM had standing to enforce the terms of the note, we consider the text of General Statutes §§ 42a-3-301[9] and 42a-3-309.[10] Because SOM presented no evidence that it possessed the original note at the time of trial, and the plaintiffs do not make that claim in any event, SOM was neither a holder nor a nonholder in possession. See General Statutes § 42a-1-201 (21). Therefore, in order to enforce the note, SOM must meet the criteria of § 42a-3-309. See General Statutes § 42a-3-301.

In a different context, our Supreme Court considered the language of § 42a-3-309 (a) in *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 759–60, 680 A.2d 301 (1996). In that case, the defendant contended that the plaintiff could not obtain a judgment of strict foreclosure under §§ 42a-3-301 and 42a-3-309. Id., 759. Specifically, the defendant claimed that because the plaintiff never proved it possessed the original note, it could not satisfy the requirement of § 42a-3-309 to show possession to enforce a lost note. Id. Our Supreme Court rejected this claim, noting that "[i]t is well established . . . that the [mortgagee] is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both." (Internal quotation marks omitted.) Id. The defendant did not dispute that it executed the note and mortgage and that the debt existed. Id. The plaintiff chose its equitable remedy, foreclosure of the mortgage. Id.

In deciding the case, however, our Supreme Court observed that because the plaintiff had "chosen to pursue the equitable action of foreclosure of the mortgage, rather than a legal action on the note, the fact that [the plaintiff] never possessed the lost promissory note [was] not fatal to its foreclosure of the mortgage. . . . [W]hatever restrictions §§ 42a-3-301 and 42a-3-309 might put upon the enforcement of personal liability based solely upon a lost note, they [did] not prohibit [the plaintiff] from pursuing an action of foreclosure to enforce the terms of the mortgage." Id., 759–60. Our appellate courts have not addressed whether an assignee may pursue an action on a lost note it never possessed,[11] but courts in other jurisdictions, and our Superior Courts, have done so.

In *Dennis Joslin Co., LLC* v. *Robinson Broadcasting Corp.*, 977 F. Supp. 491, 495 (D.D.C. 1997) (*Dennis Joslin*), the District Court held that the District of Columbia's version of UCC § 3-309 precluded the plaintiff from recovering on a note it did not possess at the time the note was lost. The court noted that both UCC § 3-309 (1990) and its predecessor, the original UCC § 3-804 (1952), "are intended to protect defendants from being obligated to two persons or entities with conflicting claims—the original holder who lost the instrument and a subsequent holder who innocently acquired the lost note." Id., 494. After attempting to discern the intent behind the revision, the court nonetheless concluded "that the language of [UCC § 3-309 (1990)] clearly states that the person suing on a lost note is entitled to enforce the note only if that person was in possession of the instrument *when loss of possession occurred*." (Emphasis in original; internal quotation marks omitted.) Id., 494–95. The court acknowledged that although "there does not appear to be a logical reason to distinguish between a person who was in possession at the time of the loss and one who later comes into possession of the rights to the note, the plain language of the provision mandates that the plaintiff suing on the note must meet two tests, not just one: it must have been *both* in possession of the note when it was lost and entitled to enforce the note when it was lost." (Emphasis in original.) Id., 495.

In 2002, The American Law Institute and the National Conference of Commissioners on Uniform State Laws, the drafters of the model UCC, revised § 3-309[12] with the intent of rejecting the result in *Dennis Joslin*. Uniform Commercial Code § 3-309 (2003) official comment 2. The District of Columbia adopted this revision in 2013. D.C. Code § 28:3-309 (2013). Connecticut has not adopted this revision. Had it done so prior to the events in issue, SOM might well have been entitled to enforce the note. Because the legislature has not acted, we look to other nonbinding authorities regarding the application of UCC § 3-309 (1990).

In *Atlantic National Trust, LLC* v. *McNamee*, 984 So. 2d 375, 377–78 (Ala. 2007) (*Atlantic National Trust*), the Supreme Court of Alabama rejected the *Dennis Joslin* court's interpretation of UCC § 3-309 (1990).[13] The court reasoned that Alabama's version of the UCC was silent regarding the rights of assignees, and supplemented the statute with the common law pursuant to § 1-103 of the UCC. Id., 378. Because under Alabama common law, an assignee has "the same rights, benefits, and remedies that the assignor possesses," the court held that an assignee could enforce a lost note under UCC § 3-309 (1990). (Internal quotation marks omitted.) Id.

Some courts have interpreted the 1990 revision of UCC § 3-309 in the same manner as *Dennis Joslin*. See *In re Harborhouse of Gloucester, LLC*, 505 B.R. 365, 369–72 (Bankr. D. Mass.), aff'd, 523 B.R. 749 (B.A.P. 1st Cir. 2014); *In re Kemp*, 440 B.R. 624, 632–33 (Bankr. D.N.J. 2010); *McKay* v. *Capital Resources Co., Ltd.*, 327 Ark. 737, 740–41, 940 S.W.2d 869 (1997); *Zullo* v. *HMC Assets, LLC*, Docket No. 16 MISC 000413 (RBF), 2017 WL 2720319, *9 (Mass. Land June 22, 2017); *Emerald Portfolio, LLC* v. *Outer Banks/Kinnakeet Associates, LLC*, 790 S.E.2d 721, 725 (N.C. App. 2016); *U.S. Bank, N.A.* v. *Jones*, 71 N.E.3d 1233, 1239–40 (Ohio App. 2016).[14] Other courts have rejected that interpretation, supplementing the statute with the common law of assignments. See *In re Caddo Parish-Villas South, Ltd.*, 250 F.3d 300, 301–302 (5th Cir. 2001) (applying Louisiana law); see also *Southeast Investments, Inc.* v. *Clade*, Docket No. 3:97-CV-1799-L, 1999 WL 476865, *3 (N.D. Tex. July 7, 1999), aff'd, Docket No. 99-11085, 2000 WL 423350 (5th Cir. April 3, 2000) (decision without published opinion, 212 F.3d 595 [5th Cir. 2000]); *National Loan Investors, L.P.* v. *Joymar Associates*, 767 So. 2d 549, 551 (Fla. App. 2000); *NAB Asset Venture II, L.P.* v. *Lenertz, Inc.*, Docket No. C4-97-2181, 1998 WL 422207, *3 (Minn. App. July 28, 1998); *YYY Corp.* v. *Gazda*, 145 N.H. 53, 60–61, 761 A.2d 395 (2000); *Bobby D. Associates* v. *DiMarcantonio*, 751 A.2d 673, 675–76 (Pa. Super. 2000); *JP Morgan Chase Bank, N.A.* v. *Stehrenberger*, Docket No. 70295-5-I, 2014 WL 1711765, *3–4 (Wn. App. April 28, 2014) (decision without published opinion, 180 Wn. App. 1047), cert. denied, 181 Wn. 2d 1017, 337 P.3d 325 (2014).[15]

Our Superior Court's decisions regarding an assignee's entitlement to enforce a lost note under § 42a-3-309 have likewise split along the *Dennis Joslin/Atlantic National Trust* divide. See *Cadle Co. of Connecticut, Inc.* v. *Messick*, Superior Court, judicial district of Middlesex, Docket No. CV-00-092983-S (June 26, 2001) (30 Conn. L. Rptr. 21, 22–23, 24) (citing implications of holding in *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 759–60, in which court granted motion for summary judgment where plaintiff

did not have possession of note at time it was lost); *Eastern Savings Bank, FSB* v. *Pellicano*, Superior Court, judicial district of Fairfield, Docket No. CV-96-334043-S (February 24, 1998) (declaring without analysis that § 42a-3-309 does not prevent assignee from enforcing obligation where note was lost while in assignor's possession). One Superior Court decision allowed a bank to enforce a note that it never possessed because it merged with another bank that had lost the note. *Webster Bank* v. *River Road Antiques, LLC*, Superior Court, judicial district of Tolland, Docket No. CV-04-0084651-S (May 5, 2008) (45 Conn. L. Rptr. 539, 541–42).

The plain language of the statutes persuades us that *Dennis Joslin* and its progeny properly interpret and apply UCC § 3-309 (1990), especially in light of our Supreme Court's holding in *New England Savings Bank*. As previously stated, the application of § 42a-3-301, in the circumstances of the present case, leads to the conclusion that SOM is entitled to enforce the note only if it satisfies the standards stated in § 42a-3-309. Subsection (a) of § 42a-3-309, in turn, provides that "[*a*] *person* not in possession of an instrument is entitled to enforce the instrument if (i) *the person* was in possession of the instrument and entitled to enforce it when loss of possession occurred . . . ." (Emphasis added.) The only logical construction of the statutory language compels the conclusion that the only person who can enforce the note is the person in possession of the note when it was lost. When the text of a statute is clear, we do not adopt a different meaning or interpretation, unless the clear meaning is absurd, regardless of whether we agree or disagree with underlying policy. *State* v. *Lima*, 325 Conn. 623, 631, 159 A.3d 651 (2017).

There are, of course, dueling policies. The defendant maintains that if only the person who lost the note is entitled to enforce the note, the debtor is better protected against the prospect of paying twice. See General Statutes § 42a-3-309 (b); see also *In re Harborhouse of Gloucester, LLC*, supra, 505 B.R. 372; *McKay* v. *Capital Resources Co., Ltd.*, supra, 327 Ark. 741. On the other hand, as the plaintiffs suggest, if it is possible to enforce a note to which the right to enforce the note, but not the physical note, has been assigned, then fairness is promoted because unjust enrichment is prevented. See, e.g., *National Loan Investors, L.P.* v. *Joymar Associates*, supra, 767 So. 2d 551. In light of the clear language of the statute, the plaintiffs' policy arguments cannot prevail.

The plaintiffs also argue that assignability is favored by the common law, and that common law may be used to supplement the UCC. See, e.g., *Wykeham Rise, LLC* v. *Federer*, 305 Conn. 448, 471, 52 A.3d 702 (2012) ("[a]ssignability of rights is clearly favored with respect to contracts generally"). Connecticut courts also recog-

nize that assignees step into the shoes of the assignor, even under the UCC. See, e.g., *National Loan Investors Ltd. Partnership* v. *Heritage Square Associates*, 54 Conn. App. 67, 73, 733 A.2d 876 (1999) (*National Loan Investors*). *National Loan Investors*, however, only considered the extent to which the UCC codifies the common law, not the extent to which it is supplemented by it. See id., 73–74. It cites General Statutes § 42a-3-203, which provides in part that "an instrument is transferred when it is *delivered* . . . ." (Emphasis added.) Absent delivery, there is no transfer. Where the UCC expressly addresses an issue, the common law does not supplant the code. See *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 270, 439 A.2d 314 (1981) ("[w]hile it is true that the [UCC] incorporates, by reference, supplementary general principles of contract law and of the law merchant . . . such supplemental bodies of law cannot displace those provisions of the [UCC] that are directly applicable" [citation omitted]). Because § 42a-3-309 is directly applicable to the situation underlying the present case, the common law of assignments does not displace its clear provisions.

We also note that although the UCC has been revised by The American Law Institute and the National Conference of Commissioners on Uniform State Laws, and the revision has been available for the legislature to adopt for sixteen years, our legislature has thus far not acted on the proposed revision.[16] This court is "not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Mayer* v. *Historic District Commission*, supra, 325 Conn. 776. "[C]ourts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." (Internal quotation marks omitted.) *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, 309 Conn. 412, 435, 72 A.3d 13 (2013). "If the legislature believes we have mistaken its silence, it can easily overrule us." *Maio* v. *New Haven*, 326 Conn. 708, 722, 167 A.3d 338 (2017). Thus, the common law of assignments does not supplement § 42a-3-309 (a) because the statute is clear and unambiguous and the legislature has not acted otherwise.

We now apply § 42a-3-309 to the facts of this case. In the course of Chodos' testimony at trial, the plaintiffs introduced a copy of the note into evidence, rather than the original. The copy did not show an endorsement from SOE to SOM, nor was it endorsed in blank. The plaintiffs also introduced the assignment, which transferred SOE's entire interest in the note to SOM. There was no evidence presented from which the jury reasonably could infer that the note was lost while in SOM's

possession. Chodos never claimed to have delivered the note from SOE to SOM. The jury found, in its answers to interrogatories, that the note was lost while in the possession of SOE, and that SOE then assigned the note to SOM. In denying the defendant's posttrial motions, the court recognized that sequence, and the plaintiffs argue in their appellate brief, not that SOM was a holder of the note in any way but rather that the law allowed assignment of the proceeds of a note without physical transfer of the note. The court, then, erred in denying the motions to set aside the verdict and for judgment notwithstanding the verdict, because neither SOE nor SOM was entitled to enforce the note.

## II

We next consider the issues regarding the management contract. The defendant claims that the trial court abused its discretion in denying her motion for judgment notwithstanding the verdict and in refusing to set aside the verdict in favor of SOE and SOM as to their claims of breach regarding the management contract. The defendant argues that there was no evidence that the breach of the management contract caused any loss, and that neither the breach of the management contract nor the breach of the implied covenant of good faith and fair dealing, if any, resulted in damages that could be fairly ascertained.

A preliminary question is whether either SOM or SOE were parties to the management contract. The management contract was signed only by Chodos on the plaintiffs' side; the management contract was expressly incorporated into the purchase agreement, to which SOE was a party. In regard to the purchase agreement, SOM is not listed as a seller either in the opening paragraph or in the list of parties to be noticed in § 12 of the agreement. SOM appears in the purchase agreement only on the signature page, where Chodos, as the duly authorized president of SOM, signed for SOM, which was SOE's general partner. Because partnerships are entities distinct from their partners; General Statutes § 34-313; SOM's status as general partner did not have the effect of making SOM a party to the purchase agreement. Nor did SOM's purported status as the manager of 516, LLC, bestow party status because a limited liability company's manager has standing to enforce a contract only "where the object of the proceeding is to enforce a . . . manager's right against or liability to the limited liability company or as otherwise provided in an operating agreement."[17] General Statutes (Rev. to 2015) § 34-134. Similarly, the note, which was part of the overall purchase transaction, was issued to SOE only. SOM does not appear in that document at all. Finally, as we have noted, the management contract, which also was signed at the October 19, 2006 closing, was executed by the defendant and Chodos.[18] The management contract provided that the defendant could

not terminate the management contract "for any reason while any debt is owed to [SOE]." SOM was not mentioned at all in the management contract. Thus, at least prior to the assignment from SOE to SOM, SOM did not have the ability to enforce or to pursue damages arising from the management contract.

We must then consider the effect, if any, of the assignment on the right to enforce the management contract.[19] The assignment purported to assign "any and all claims, rights and title to any and all defaulted loans and damages relating to the sale of 516, LLC"; but the management contract itself stated that no assignment could be effected "without the prior written consent of the [m]anager and the [c]o-[m]anager." Because the assignment was signed by Chodos alone—as agent for SOM on behalf of SOE—and not by the defendant, the "manager" of 516, LLC, the assignment document was ineffective to transfer SOE's rights under the management contract to SOM. Therefore, the assignment did not have the effect of transferring to SOM the ability to enforce the terms of the management contract. Only SOE, then, retained any right to enforce the management contract.[20]

The defendant's claim that the trial court abused its discretion in denying the motion to set aside the verdict on this ground is, however, unreviewable. The defendant claimed in her motion to set aside the verdict that there was insufficient evidence to support the claims for damages arising from breach of the management contract, but the motion itself was, in its entirety, a list of issues. The relevant claim, in its entirety, was the following: "5. There is insufficient evidence to support the verdict on the claim that [the] defendant, Sherri DeVito, breached any agreement not to change the operating agreement *and, also, there was insufficient evidence to support any damage claim arising from the breach of contract claim, including lack of standing.*" (Emphasis added.) Her corresponding brief to the trial court did not address the claim of insufficient evidence to support damages at all. In its memorandum of decision, the trial court acknowledged that "[t]he defendant originally listed nine grounds in her motion to set aside the verdict but has only briefed four . . . . Accordingly, the court addresses those four grounds." The defendant did not request the trial court to rule further on the issue. See Practice Book § 60-5.

The trial court's memorandum of decision did not address the defendant's claim because she did not brief the issue. On appeal, the defendant has not challenged the trial court's apparent finding of abandonment, but claims an abuse of discretion for failure to set aside the verdict for insufficient evidence. "Both our Supreme Court and this court have stated the principle that, when a party abandons a claim or argument before the trial court, that party waives the right to appellate review

of such claim because a contrary conclusion would result in an ambush of the trial court." (Internal quotation marks omitted.) *State* v. *Martone*, 160 Conn. App. 315, 327, 125 A.3d 590, cert. denied, 320 Conn. 904, 127 A.3d 187 (2015). Therefore, because the defendant abandoned her claim in the trial court that there was insufficient evidence to support the claims of damages regarding the management contract, her claim is unreviewable here.

We briefly address the award of $1.325 million in damages. Neither party requested that the jury award damages as to the individual counts, and the jury simply awarded undifferentiated damages in the amount of $1.325 million. In such circumstances, "an appellate court will presume that the jury found every issue in favor of the prevailing party . . . and decline further appellate review. . . . Where there was an error free path available to the jury to reach its verdict, and no special interrogatories were submitted showing which road the jury went down, any judgment rendered on such a verdict *must* be affirmed." (Emphasis in original; internal quotation marks omitted.) *Brown* v. *Bridgeport Police Dept.*, 155 Conn. App. 61, 69, 107 A.3d 1013 (2015). In the circumstances of this case, because the jury found in favor of the plaintiffs on more than one count but awarded only a total amount of $1.325 million in damages, we presume that the jury found damages of $1.325 million, whether based on breach of the note or breach of the management contract. Accordingly, the verdict must stand.

The judgment is reversed as to SOE's claim of breach of contract regarding the note and all of SOM's claims, and the case is remanded with direction to render judgment in favor of the defendant on those claims; the judgment is affirmed as to SOE's claim regarding breach of the management contract.

In this opinion the other judges concurred.

[1] Robert DePaolo was also named as a defendant in this action. The plaintiffs withdrew their complaint as to DePaolo before the trial commenced. All references to the defendant in this opinion are to DeVito alone. The defendant's first name has been spelled in the record as both "Sherry" and "Sherri." Her submissions to this court use the spelling "Sherri." We retain the spelling "Sherry" in the case caption but use "Sherri" in this opinion when necessary.

[2] Judgment was not rendered in favor of the plaintiffs on the second count, which alleged breach of the covenant of good faith and fair dealing, apparently in light of the plaintiffs' verdict as to the first count, which alleged breach of contract on the same facts.

[3] The opening paragraph of the purchase agreement provides in part that "[t]his membership interest purchase agreement . . . is entered into as of this [19th] day of October, 2006 by and between [SOE] . . . and [the defendant] . . . ."

[4] The guarantor of the note has played no role in this appeal.

[5] The defendant argues that SOE did not have standing to pursue this action because it was a Delaware limited partnership that was not registered in Connecticut, and it had transacted business in this state. See General Statutes §§ 34-38*l* and 34-38o. Section 34-38o (a), however, provides in relevant part that "[a]ny foreign limited partnership may . . . sell and convey real and personal property in this state for its lawful uses and purposes . . . without such action constituting transacting business in this state for

the purposes of this chapter." Under the then current statutory provision, "[a] limited liability company membership interest is personal property." General Statutes (Rev. to 2015) § 34-169.

The defendant argues, however, that because Chodos, as owner of SOE, which owned 516, LLC, "did substantial work in preparing the property for development at 516 Round Hill Road, Greenwich, and in obtaining the necessary permits for its eventual development," and because Chodos "also claimed that he retained the right to co-manage" 516, LLC, for SOE's benefit, SOE transacted business in this state. These arguments, however, do not reflect the distinct statuses of partnerships and partners, corporations and shareholders, limited liability companies and members, and the individuals who own them. The jury found that the plaintiffs had proved they were "in good standing at the time of the formation of the contracts" and, thus, apparently found that SOE was not transacting business in this state. The jury's action finds some support in the evidence: the only specific transactions by SOE involved real and personal property transactions, which § 34-38o exempts from the meaning of transacting business. Additionally, Chodos testified that the sole purpose of SOE was to act as a "holding company" of other entities.

[6] At trial, the court engaged in the following colloquy with the plaintiffs' counsel:

"The Court: [Plaintiffs' counsel], why is [SOE] the plaintiff if it has assigned its interest?

"[The Plaintiffs' Counsel]: Well, initially, when . . . this case was started in 2010, they were in existence.

"The Court: I see. . . . They're just in the caption, I believe.

"[The Plaintiffs' Counsel]: That's right. They're in the caption. It remained that way; and again . . . at the end of the day . . . once we approve the assignment and all these claims have been assigned, technically, it will be [SOM] that will have the right to recoup any judgment found in our favor."

The court then deferred considering the issue of whether SOE should remain as a plaintiff, at least regarding its ability to enforce the note after the assignment, but then never specifically addressed the issue.

[7] In the trial court's memorandum of decision on the defendant's motion to set aside the verdict, also dated August 21, 2015, the court further concluded: "The defendant contends that there is no evidence that SOM ever possessed the note, but that is beside the point. The documents reflecting the assignment of rights in the note were admitted into evidence, and the jury was instructed on the alleged assignment of the right to enforce the note to SOM, not any assignment of the note itself. The defendant has not met the burden of proving that the assignment of rights was invalid, or that a reasonable jury could not find that SOM was entitled to enforce the note. Accordingly, the verdict will not be set aside on the ground that the original note was not produced, considering that the plaintiffs submitted sufficient evidence for the jury to reach its specific conclusion that [the] plaintiffs had the right to enforce the note against [the] defendant." (Footnote omitted.)

[8] The defendant claims that there was insufficient evidence to support the conclusion that the note was "lost" pursuant to the provisions of § 42a-3-309. In light of our disposition of the issue, we need not decide this claim.

[9] General Statutes § 42a-3-301 provides that a " '[p]erson entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

[10] General Statutes § 42a-3-309 provides: "(a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

"(b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, section 42a-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement

unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.”

[11] We note that the defendant consistently has relied on precedents in foreclosure actions, which have limited persuasive value in the present context.

[12] UCC § 3-309 (a) (2003) was revised to state that “[a] person not in possession of an instrument is entitled to enforce the instrument if . . . the person seeking to enforce the instrument . . . was entitled to enforce the instrument when loss of possession occurred; or . . . has directly or indirectly acquired ownership of the instrument from a person who was entitled to enforce the instrument when loss of possession occurred . . . .”

[13] At the time, Alabama’s version of UCC § 3-309 was the 1990 revision. Alabama has since adopted the 2002 revision noted in footnote 12 of this opinion. Ala. Code § 7-3-309 (1975).

[14] Arkansas and Ohio have since updated their versions of § 3-309 to the 2002 revision. Ark. Code Ann. § 4-3-309 (2005); Ohio Rev. Code Ann. § 1303.38 (West 2016).

[15] Florida, Minnesota, New Hampshire, and Texas have also updated their versions of § 3-309 to the 2002 revision. Fla. Stat. § 673.3091 (2004); Minn. Stat. § 336.3-309 (2003); N.H. Rev. Stat. Ann. § 382-A:3-309 (2004); Tex. Bus. & Com. Code Ann. § 3.309 (Vernon 2005).

[16] The implications of the *New England Savings Bank* decision are likewise telling because the decision would have put the legislature on notice regarding § 42a-3-309.

[17] The operating agreement of 516, LLC, is both silent as to the standing of managers and irrelevant because 516, LLC, is not a party to this action.

[18] The defendant argues that because Chodos signed the management contract without reference to any agency capacity, neither SOE nor SOM has the power to enforce it; the management contract, however, was integrated into the purchase agreement. Section 18 of the purchase agreement provided that “[u]ntil such time as [the defendant] has paid all sums due under the [n]ote, Murray Chodos shall be a [c]o-[m]anager of 516, LLC, pursuant to the instrument attached hereto *and made a part hereof* as [e]xhibit B.” (Emphasis added.) Although the defendant denied signing the management contract at trial, she does not dispute that issue on appeal. Because the purchase agreement, which the defendant admitted signing, clearly incorporated the management contract, the defendant’s argument that SOE was a stranger to the management contract fails.

Additionally, the jury was instructed that, under General Statutes § 42a-3-117, “the obligation of a party to an instrument to pay the instrument may be modified, supplemented, or nullified by a separate agreement of the obligor and a person entitled to enforce the instrument, if the instrument is issued or the obligation is incurred in reliance on the agreement or as part of the same transaction giving rise to the agreement.” The jury’s subsequent finding that SOE was a party to the management contract because it was executed as part of the same transaction as the note is consistent with our observation that the management contract was integrated into the purchase agreement, as the purchase agreement also was executed at the same time. SOE’s subsequent assignment of the note has no necessary effect on its ability to enforce the management contract. Because SOM was not a party to the purchase agreement or the note, however, it was likewise not a party to the management contract.

[19] The defendant has not specifically argued that the assignment failed to convey SOE’s rights regarding the enforcement of the management contract, but we consider the issue briefly because of the disagreement concerning the plaintiffs’ standing to enforce it.

We note that the plaintiffs did not allege in their complaint that SOE had assigned the management contract to SOM; rather, the complaint seems to allege that SOE and SOM were both parties to the management contract. “It is axiomatic that the parties are bound by their pleadings.” (Internal quotation marks omitted.) *Harborside Connecticut Ltd. Partnership* v. *Witte*, 170 Conn. App. 26, 34, 154 A.3d 1082 (2016). Likewise, the jury was never charged with deciding whether the management contract was assigned, as opposed to the note; the issue was not a subject of the jury interrogatories. Finally, although Chodos testified that the assignment was meant to assign “everything” to SOM, Chodos’ list of “everything” included “the binder issued by the Secretary of State of Delaware, the seal, any books and records that we would have had . . . .” Chodos was later asked if the

*note* was intended to be included in the assignment. He replied, "Everything pursuant to the sale of 516, LLC, was intended to be transferred to the successor entity as we closed the former entity formally." The language of the assignment itself is not so broad: the management contract was not necessarily part of a claim, right, or title "*to any and all defaulted loans and damages . . . .*" (Emphasis added.)

Chodos' answer was in reply to a question about the intent to transfer the note, which the plaintiffs alleged had been assigned. The plaintiffs have never claimed, even on appeal, that the management contract was assigned.

[20] The defendant argues that SOE did not have standing because it had dissolved and wound up its affairs prior to trial. Although Chodos testified that SOE had wound up its affairs, our holding that the management contract was not properly assigned leaves SOE with the two claims of breach regarding the management contract before SOE was terminated. See General Statutes §§ 34-373 and 34-374 (c).

———————————————