## EDWARD WINSLOW AND OTHERS *vs.* INGRAM FLETCHER AND OTHERS.

The defendants, residing in the state of Indiana and owning stock in a bank located there, lodged a certificate of the stock, with a blank power to sell and transfer it, with a corporation in this state as collateral security

for a loan, its value being considerably in excess of the loan. Held that their equitable interest in the stock could not be reached by the process of foreign attachment in this state.

And that the stock could not be reached by ordinary attachment here.

[Argued October 15th, 1885—decided February 12th, 1886.]

ACTION to recover money due; brought to the Superior Court in Hartford County. The defendants resided in the state of Indiana, and service was made only by leaving a copy with the Connecticut Mutual Life Insurance Company as a garnishee. The defendants appeared only to plead to the jurisdiction. The court (*Andrews, J.,*) found the facts, and rendered judgment for the defendants. The plaintiffs appealed. The case is fully stated in the opinion.

*A. P. Hyde,* for the appellants.

1. The shares of stock were "effects," within the meaning of that word as used in our statute with regard to foreign attachment. Webster's Dict., *in verbum; North* v. *Forest,* 15 Conn., 400; *Ayres* v. *French,* 41 id., 142; *N. Eng. Marine Ins. Co.* v. *Chandler,* 16 Mass., 275; *Smith* v. *Am. Coal Co.,* 7 Lansing, 317; *Bank* v. *Lanier,* 11 Wall., 369; *McAllister* v. *Kuhn,* 96 U. S. R., 87.

2. The shares were in the hands of the life insurance company as agent or trustee of the defendants. The defendants may have a shadow of title, but the real title is in the company. *N. Eng. Marine Ins. Co.* v. *Chandler,* 16 Mass., 275; *Cook* v. *Hallett,* 119 id., 148.

3. They were so concealed in the hands of the insurance company that they could be taken by foreign attachment. *Thompson* v. *Stewart,* 3 Conn., 183; *Treadway* v. *Andrews,* 20 id., 385; *Bridgeport Bank* v. *N. York & N. Haven R. R. Co.,* 30 id., 231; *N. Eng. Marine Ins. Co.* v. *Chandler,* 16 Mass., 275, 280; *Carty* v. *Fenstemaker,* 14 Ohio St., 457; *Burnham* v. *Doolittle,* 14 Nebr., 214; *Bank* v. *Lanier,* 11 Wall., 369, 377; *McAllister* v. *Kuhn,* 96 U. S. R., 87, 89; *Smith* v. *Amer. Coal Co.,* 7 Lansing, 317; *N. York & N. Haven R. R. Co.* v. *Schuyler,* 34 N. York, 30.

*H. C. Robinson* and *W. F. Henney,* for the appellees.

CARPENTER, J. Complaint for a money demand, served only by process of foreign attachment. The plaintiffs and defendants are non-residents. No property was attached except that alleged to be in the hands of the garnishee. The defendants appear for the sole purpose of pleading to the jurisdiction.

The plea alleges that the plaintiffs are residents of the state of New York; that the defendants are residents of the state of Indiana; that no personal or other service of process has ever been made upon the defendants or any of them; that no service of the original process was ever made otherwise than upon the Connecticut Mutual Life Insurance Company, named therein as garnishee; that said garnishee was not indebted to the defendants or either of them, and had not, at the time of the service, any effects or estate of the defendants or either of them in its hands that could be attached or secured by the process of foreign attachment.

The reply denies that part of the plea which alleges no indebtedness by the garnishee and no estate in its hands. The finding shows that at the time of the service the defendants were indebted to the garnishee in the sum of two hundred thousand dollars, and that the garnishee held as collateral security therefor certificates of stock in the Indianapolis National Bank located in the state of Indiana, to the value of two hundred and forty thousand dollars, with a blank power to sell and transfer the same. This stock was transferable only on the books of the bank, and had not been transferred.

Upon these facts the Superior Court found the issue for the defendants and dismissed the complaint. The plaintiffs appealed.

The question is, whether the attachment will hold any surplus there may be in the bank stock after paying the defendants' indebtedness to the garnishee.

The case of the *Middletown Savings Bank* v. *Jarvis*, 33 Conn., 372, throws some light on this question. Jarvis pledged certain stock in the Middlesex Quarry Company to the savings bank to secure a loan. The stock was trans-

ferred to and stood in the name of the bank. Rowland, a creditor of Jarvis, attached his equitable interest in the stock in the mode provided by statute for attaching stock and sold it on an execution, the officer transferring such interest to the purchaser. Jarvis afterwards assigned his interest in the stock to others. On a bill of interpleader brought by the bank, the attaching creditor held the stock subject to the lien of the bank. Counsel for the assignees claimed that Jarvis's interest in the stock could only be taken by a bill in equity or by the process of foreign attachment. Counsel for the attaching creditor contended, in an elaborate brief, that foreign attachment would not reach it. Of course the main question was, whether the stock was well attached. The court held that it was. Strictly speaking, the court had no occasion to say that it could not be attached by foreign attachment; but the court by McCURDY, J., says:—" We do not see very well how the case comes within the provisions of the law of foreign attachment, but it certainly does come precisely under the statute to which we have referred."

Now if the stock in the present suit was the stock of a domestic corporation, that case is a precedent for holding that it might have been attached directly by the ordinary process. That being so, it was not subject to the law of foreign attachment, for it was not concealed. In its nature it was as incapable of concealment as real estate. It was at all times visible, accessible property, and open to attachment.

Does the fact that it is stock of a foreign corporation change the law in this respect? We think not. No good reason occurs to us why the rule should be different in the two cases. The stock in Indiana is just as accessible to these creditors as it would have been if located in this state. The statute law of Indiana provides for an attachment of stock. Rev. Statutes of Indiana, 1881, sec. 723. Section 931 makes the corporation liable as garnishee in respect to " any share or interest in " its stock. Legally there is no hardship in requiring them to go there, where in contempla-

tion of law the stock is situated, instead of coming here. By coming here they can only succeed upon the theory that the stock is in some sense located in this state. Such a theory is inconsistent with a familiar and well-settled rule, that stock in a corporation for the purposes of an attachment has its situs where the corporation is located. Again; if the insurance company held the stock in its own name simply as security for the debt, it would have held nothing that it could have been compelled to deliver to the officer to be seized and sold on an execution. There was no indebtedness that it could have been compelled to pay, because it was not owing the defendants. Whatever liability there was, hinged upon two contingencies—that the stock should be sold by the garnishee, and that it should bring enough to leave a surplus after paying its claim against the defendants. Surely such a liability is not subject to the law of foreign attachment. If the defendants redeem the stock, as they may, they will be entitled to an unconditional re-transfer of the stock to them. The obligation to re-convey is not a debt subject to a garnishee process. The only way in which a surplus in such a case can be reached, before it is ascertained and becomes a debt, is to attach the stock, as was done in the case of *Middletown Savings Bank* v. *Jarvis,* supra, subject to the pledge.

Thus far we have assumed that the title to the stock stands in the name of the garnishee. But it does not. That fact and one other, namely, that this is stock in a foreign corporation, distinguish this case from the case referred to. The distinction in both respects is unfavorable to the plaintiff. We think it is very clear that the insurance company was not indebted to the defendants. It had not become the owner of the bank stock or any part of it, and so was not indebted to the defendants for any surplus. No part of the stock had been sold; consequently nothing had been received to apply on the debt of the defendants, much less to pay over to the defendants. It will hardly do to say that the insurance company was the owner because it had control of the stock and had it in its power at any time to

become the owner. There is a difference between the possession of property and the mere naked power to possess it. The power to possess it in this case was not to be exercised except in a certain contingency, and that contingency had not happened. The parties contemplated a permanent loan, to continue at their pleasure. Should the debtor desire to pay, or should the creditor require it, it was supposed that the money would be paid, and that the bank stock would never in fact be transferred or sold. The power of sale was given simply as a means of compelling payment. Manifestly it cannot be said in a legal sense that the creditor now owns the stock or owes for it. The law will not regard that as done which the parties under existing circumstances intended should not be done. The defendants for all practical purposes still own the stock. They alone can vote on it and receive the dividends. They have the substance, while the garnishee has but the possibility of a title.

The only other ground on which the garnishee can be held is, that it has the goods and effects of the defendants in its hands so concealed that they cannot be attached by ordinary process. That the stock itself is not in the garnishee's hands is, we think, a proposition that requires no further argument. That the certificates, with authority to sell, and a power of attorney to transfer, are in its hands, must be conceded. But the certificates are not the stock. " The stock of a corporation," says Mr. Lowell, " may be defined as the sum of all the rights and duties of its stockholders. * * * Each share therefore is but a fraction of all the rights and duties which compose this sum. * * * A share of stock in a corporation consists of a set of rights and duties between the corporation and the owner of the share."

These rights and duties are in fact and law quite distinguishable from the certificates and the power to transfer those rights and duties. The certificate is evidence that the person therein named possesses those rights and is subject to those duties, but it is not in law the equivalent of those

rights and duties. They are muniments of title, but not the title itself; much less the real property.

While these certificates are in themselves. valuable for some purposes, and to some extent may properly be regarded as property (see *Ayres* v. *French*, 41 Conn., 142), yet they are distinct from the holder's interest in the capital stock of the corporation, and are not goods and effects within the meaning of the statute relating to foreign attachment. They are no more subject to an attachment or a trustee process than a promissory note. The debt is subject to attachment, but the note itself, which is simply evidence of the debt, is not. So with stock. That may be attached, but the certificates cannot be.

Again. The books of the bank show that the title to the stock is in the defendants. As there can be no transfer of the stock except on the books of the bank, no title can exist, except in the original subscribers, by any other means than a transfer. Our own court has said, in *Northrop* v. *Newtown & Bridgeport Turnpike Co.*, 3 Conn., 544, that " the transfer of stock on the books of a company does not operate by giving notice of an antecedent conveyance, but is a fact essentially necessary to originate a title, before the happening of which registration no title has been or can be transferred." But the bank is a foreign corporation. No part of its capital or property is within the jurisdiction of this court. The certificates and authority to transfer are held by one of our citizens; but we cannot through them reach the stock or take any action relative thereto which the authorities of the bank or the courts of Indiana are bound to respect.

It was suggested that these assignments and powers of attorney, being executed in blank, the officer may sell them at the post and deliver them to the purchaser, and that he may fill the blanks so as to have the stock transferred to himself. But, meanwhile, what becomes of the rights of the insurance company? It has the undoubted right to retain the possession of the certificates as its security; and we know of no power in our courts to compel it to part

with them at the instance of another creditor.  How then is the officer going to deliver possession to the purchaser?

If we attempt to compel a sale of the stock for the purpose of paying the debt due to the garnishee and in that way reach the surplus for the attaching creditor, we shall encounter another difficulty.  The loans secured by the pledge are to remain so long as it pleases the parties.  We know of no process or principle by which the court can directly compel the insurance company in this proceeding to collect those notes against its wishes.  The statute of Indiana (sec. 939, Rev. Statutes of 1881), expressly provides that " a garnishee in attachment shall not be compelled, in any case, to pay or perform any contract in any other manner or at any other time than he would be bound to do for the defendant in attachment."  On this subject Jones on Pledges, sec. 372, says:—" A creditor of the pledgor could not compel the pledgee to accept payment of the debt before its maturity, even if he could compel such acceptance in any case.  It is only by statute that this can be done.  Though it has been intimated in a few cases that possibly an attachment of pledged property might be sustained upon payment or tender to the pledgee of the amount due him, yet it is doubtful whether this can be done without express statutory authority therefor.  A resort to this expedient seems to have been generally regarded as too hazardous to attempt in the absence of any direct authority to sustain it."  To the same effect is Drake on Attachments, sec. 539.

If then the garnishee refuses to sell the stock, how is the sale to be effected?  If the stock was within this jurisdiction so that it could be attached by ordinary process and sold subject to the lien of the insurance company, under the implication of our statute, which provides that " rights or shares in the stock of any corporation " may be attached (Gen. Statutes p. 402, sec. 6), the purchaser might remove the incumbrance by paying the debt.  Thus indirectly the company might be compelled to receive its money.  We know of no other way in which it may be done ; and as the stock is in another state that way is not open to creditors in this state.

The equity of redemption in this stock is subject to the garnishee process in the state of Indiana, as we have seen. As the corporation is there, the defendant's interest in the stock may there be reached by creditors. That of itself is well nigh a conclusive argument against attaching it here. If liable to attachment in both states, a serious conflict of jurisdiction would be the probable result.

We desire to be understood as limiting the operation of this principle to the circumstances of this case—being, as it is, an attempt to reach the pledgor's equitable interest by a process of foreign attachment.

And this opinion is not to be interpreted as being in conflict with those legal rules and principles designed to facilitate the sale and transfer of stocks, or as interfering in any way with the convenience of the business public in that regard. This was a pledge and not a sale of stocks. Delivery of certificates of stock with a blank power of attorney to transfer, doubtless may be a good symbolical delivery, but it is not actual delivery for all purposes. Symbolical delivery, as its name imports, is a substitute for actual delivery, when the latter is impracticable, and leaves the real delivery to be made afterwards. As between the parties the whole title passes by such a delivery when that is their real intention. But when the transaction is a mere pledge—placing the title at the control of the pledgee for the mere purpose of securing a debt, without actually transferring the title, no title passes, for the simple reason that that is not what the parties intend. They intend simply security. If a right to the title, with the means of enforcing it, is satisfactory to the parties, courts will not by a forced construction of the transaction inject, so to speak, a title into the pledgee.

A good illustration of giving effect to a symbolical delivery according to the intention of the parties, is afforded by the case of *Cook* v. *Hallett*, 119 Mass., 148, a case cited by the plaintiff's counsel. *A* delivered to *B* a certificate of stock as collateral security for a debt. *B* thereupon surrendered the certificate to the corporation and took out a new certificate in his own name as trustee. *A* paid the debt

and *B* delivered the certificate to *A*, with a power of attorney in blank to transfer the stock. After this, and before the stock was transferred on the books of the corporation, *B* was summoned as trustee of *A* in a process of foreign attachment. It was held that he was not liable. The delivery of the certificate to *A* operated as a symbolical delivery of the stock, until the real delivery could be perfected on the books of the corporation. There the parties intended to pass the title; here they did not. If they had so intended the transfer would have appeared on the books of the bank, for apparently there was no obstruction or hindrance to such a transfer. But that is not what the parties intended. They intended simply a pledge, constituting the insurance company at most a special owner in equity for a particular purpose, leaving the defendants the general owners for all other purposes. Now we can not through and by means of that special right and power vested in the insurance company, draw this stock away from the location of the corporation and the domicile of the general owner and bring it within the jurisdiction of the courts of this state. The general rule, as stated by text writers, is that personal property pledged cannot be attached in the absence of any statute authorizing it. Jones on Pledges, sec. 372; Drake on Attachments, sec. 539; McConnell on Trustee Process, sec. 116, *et seq.* and cases cited. See also *Lippitt* v. *American Wood Paper Co.*, 14 R. Isl., 301. If by this it is intended to say that property pledged cannot be attached so as to prejudice the rights of the pledgee, it will doubtless be accepted as a correct statement of the law; but if it is intended to go further and say that if the pledgee is satisfied, by the payment of his debt or otherwise, even then it cannot be attached, the proposition, to say the least, is questionable. It may be difficult to assign any good reason why a debtor under such circumstances may object to an attachment. But we have no occasion to discuss this question. Our present inquiry concerns only stock in a corporation. When and to what extent that is attachable in this state depends entirely upon statute law.

In Maine, Massachusetts, and some other states, it is provided by statute that pledged property may be attached, and the attaching creditor is required to pay the debt within a limited time, and he thereafter holds the thing pledged by his attachment, free from any incumbrance. In Indiana, as we have seen, any interest in the stock of a corporation may be taken by a garnishee process, making the corporation the garnishee. In Connecticut any right, legal or equitable, in such stock, may be taken by ordinary attachment, and that has been held to apply to the pledgor's interest in stock pledged and standing in the name of the pledgee. *Middletown Savings Bank* v. *Jarvis*, (supra).

Thus the question before us, in one aspect of it, resolves itself into the question of the construction of our statute. Obviously the statute can have no operation outside the limits of the state. When it speaks of " rights or shares in the stock of any corporation," it has exclusive reference to corporations existing under our laws, and cannot affect rights in corporations existing under the laws of other states. Therefore the statute referred to does not authorize the attachment of the defendants' interest in the stock in question.

It is further contended that this interest may be attached under the general statute relating to attachments, it being the policy of our law to subject all a man's estate not specially exempt to the payment of his debts. But that statute relates to ordinary process and not to the process of foreign attachment; it is limited, and must be limited, to property in this state; it has and can have no extra-territorial operation.

It follows that the plaintiffs take nothing by their attachment, and that there was no error in dismissing the complaint.

In this opinion the other judges concurred.