******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ANNMARIE CASTLE, TRUSTEE *v.*
# KATHERINE DIMUGNO
## (AC 41607)

DiPentima, C. J., Bright and Devlin, Js.*

*Syllabus*

The plaintiff trustee sought to collect on a promissory note executed by the defendant and to foreclose a mortgage on certain real property securing the defendant's obligations under the note. In accordance with a stipulation entered into by the defendant and her former husband, D, which was incorporated into the judgment dissolving their marriage, D transferred his interest in the property to the defendant and the defendant executed a promissory note in the amount of $160,000 in favor of D. The note provided that it was payable by the defendant until the sale of the property or her death and that, if the property were transferred, the unpaid principal with accrued interest would become due and payable at the option of the holder of the note. Thereafter, the plaintiff, as trustee, brought an action against D for, inter alia, breach of fiduciary duty for actions he had taken as the original trustee of the trust. The trial court rendered judgment in favor of the plaintiff and, following its granting of the plaintiff's motion for postjudgment modification of a prejudgment attachment that had been granted in her favor, ordered that the plaintiff could "garnish" the note from the defendant and that a copy of the original note was to be turned over to her. D never turned over the original note to the plaintiff. The defendant subsequently quitclaimed title to the property to her daughter for no consideration and retained a life use of the property. The plaintiff then filed a judgment lien on the property, claiming that the defendant's transfer of the property to her daughter triggered her obligation to pay the note in full. After the defendant did not respond to the plaintiff's demand that she make full payment on the note, the plaintiff commenced the present two count action. The trial court rendered summary judgment in favor of the defendant on both counts of the complaint, and the plaintiff appealed to this court. *Held* that the plaintiff lacked standing to enforce the note and to foreclose on the mortgage, and, therefore, the trial court should have dismissed both counts of her complaint for lack of subject matter jurisdiction: because the plaintiff never possessed the original note, she lacked standing to enforce it, and her contention that she was entitled to enforce the note as D's successor pursuant to the order of attachment and garnishment issued by the trial court in her action against D was unavailing, as it was contrary to the plain language of the statute (§ 42a-3-309) that governs the enforcement of lost, destroyed or stolen instruments, which was directly applicable to the situation underlying the present case; moreover, there was no merit to the plaintiff's argument that her possession of a copy of the note was sufficient to confer standing on her to enforce the note, as she could not meet the requirements of § 42a-3-309 because the statute clearly and unambiguously provides that to enforce a lost note, the person seeking to enforce it must have had possession of it when it was lost; furthermore, there was no basis to conclude that the plaintiff had standing to foreclose on the mortgage, as she failed to produce any necessary and proper secondary evidence to create a genuine issue of material fact that she was the owner of the debt underlying the mortgage, and this court was not persuaded by the plaintiff's contention that she had standing pursuant to the statute (§ 52-329) providing for the garnishment of a debt as a prejudgment remedy or the trial court's common-law powers of equity, as she neither pursued the statutory (§ 52-381) procedure to execute on the garnishment nor brought a scire facias action against the defendant, and she failed to explain what common-law powers of equity would permit a court, on the facts of this case, to grant an ownership interest in a debt without following the required statutory procedures.

Argued December 3, 2019—officially released September 1, 2020

*Procedural History*

Action to, inter alia, recover on a promissory note, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the defendant filed a counterclaim; thereafter, the court, *Aurigemma, J.*, granted the defendant's motion for summary judgment on the complaint and rendered judgment thereon, from which the plaintiff appealed to this court. *Improper form of judgment*; *judgment directed*.

*Mario Cerame*, with whom, on the brief, were *Juri E. Taalman* and *Timothy Brignole*, for the appellant (plaintiff).

*Rowena A. Moffett*, for the appellee (defendant).

*Opinion*

BRIGHT, J. This appeal arises out of the plaintiff's action to collect on a promissory note (note) executed by the defendant, Katherine DiMugno, and to foreclose on the mortgage securing the defendant's obligations under the note. The plaintiff, AnnMarie Castle, as trustee for the Mary DiMugno Irrevocable Trust (trust), appeals from the judgment of the trial court rendered in favor of the defendant following its granting of the defendant's motion for summary judgment on the plaintiff's complaint. The plaintiff claims that the court (1) misinterpreted the defendant's payment obligations under the note, (2) improperly considered parol evidence regarding the meaning of certain language in the note, and (3) incorrectly concluded that there are no genuine issues of material fact regarding the defendant's alleged default under the note. In response, in addition to defending the analysis of the trial court, the defendant reasserts her claim that the plaintiff lacks standing to enforce the note and to foreclose on the corresponding mortgage, and that the court, therefore, should have dismissed the action. We agree with the defendant that the plaintiff lacks standing, and, therefore, we reverse the judgment of the trial court and remand the case to the trial court with direction to render a judgment of dismissal.

The following undisputed facts and procedural history are relevant to our analysis. On July 28, 2005, the court dissolved the defendant's marriage to Donald DiMugno (Donald). Incorporated into the judgment of dissolution rendered by the court was a stipulation entered into by the defendant and Donald. Relevant to this dispute, the defendant and Donald stipulated: "The husband shall transfer to the wife all of his right, title and interest in the real estate located at 11 Billow Road, Old Saybrook, Connecticut [(property)] . . . . In consideration for the transfer the wife shall execute a Promissory Note in the principal amount of $160,000 together with simple interest at the rate of 2 [percent] per annum, which Note shall be payable on the first of the following events: the sale of said premises by the wife and/or death of the wife." On August 24, 2005, upon Donald's transfer of his interest in the property to her, the defendant executed the note in favor of Donald in the principal amount of $160,000. In conformity with the stipulation, the note provides for simple interest to accrue at the rate of 2 percent per year. The note further provides in its second paragraph: "The undersigned promises to pay the said principal and interest as follows: 1. The sale of the [property]; or 2. The death of the [m]aker hereof." Under the note, the defendant also is responsible to pay all taxes and mortgage obligations associated with the property and is required to keep the property insured and free of mechanic's liens. The note further provides, in its penultimate paragraph, that "[i]f any

payment due hereunder shall not have been paid within [fifteen] days after the same is due . . . or if title to said property is transferred, then the entire unpaid principal, with accrued interest, shall, at the option of the holder hereof, become due and payable forthwith." The defendant's obligations under the note are secured by a mortgage on the property, which she executed contemporaneously with the note.[1]

In 2012, the plaintiff, both as trustee of the trust and conservator of Mary DiMugno, brought an action against Donald for breach of fiduciary duty, civil theft and fraud for actions that Donald had taken when he acted as the original trustee of the trust and as a fiduciary of Mary DiMugno, his mother. Following a trial, the court, on August 30, 2013, rendered judgment in favor of the plaintiff and against Donald. Following the entry of judgment, the plaintiff filed a motion for postjudgment modification of the prejudgment attachment that previously had been granted in favor of the plaintiff. At the hearing on the motion, the plaintiff's counsel expressed his concern that Donald had secreted certain assets that could be used to satisfy the plaintiff's judgment against him. Consequently, he asked the court to order that "someone in trust take them and hold them until the end [of] this case." In granting the plaintiff's motion, on September 27, 2013, the court made clear that the plaintiff could "take [the assets], you can hold them, but you can't sell them. . . . And the same thing with any bank accounts. You can put a hold on them. You can put an attachment on something, but you can't execute on it unless and until . . . a final judgment." With respect to the note, the plaintiff's counsel argued that he "should be entitled to receive the [original] promissory note. *So when the trigger of the contingency occurs, the money gets paid and we hold on to it.*" (Emphasis added.) When the court ordered that a copy of the note be turned over to the plaintiff, the plaintiff's counsel interceded by saying, "[a]gain, that would be the original of the promissory note. *I can only execute against the original.*" (Emphasis added.) The court agreed. When Donald's attorney stated that he had a copy of the note but was unsure as to the location of the original, the court replied: "See what you can do." As part of its order, issued following the hearing, the court ordered that "the plaintiff shall garnish the promissory note from [the defendant], *with a copy of the original promissory note* to be turned over to the plaintiff within seven days on or before October 5, 2013." (Emphasis added.) Although the record is unclear as to whether Donald delivered a copy of the note to the plaintiff, there is no dispute that Donald never delivered the original note to the plaintiff or that the plaintiff has never had possession of the original note.

On January 23, 2014, the defendant quitclaimed title to the property to her daughter, Michele Rossignol, for

the consideration of love and affection, and retained a life use of the property (life use deed). The defendant executed the life use deed so that the property would not have to go through probate if she died and to protect it from seizure by the state if she went into a convalescent home. The life use deed did not purport to release or extinguish Donald's mortgage on the property.

After learning of the defendant's transfer of title to the property to Rossignol, the plaintiff, relying on the language in the note that "if title to said property is transferred, then the entire unpaid principal, with accrued interest, shall, at the option of the holder hereof, become due and payable forthwith," on May 4, 2015, filed a judgment lien on the property, claiming that the defendant's transfer of title to the property to Rossignol triggered her obligation to pay the note in full. The judgment lien noted that the plaintiff, in her action against Donald, had secured a one million dollar attachment of all of Donald's assets, including the note. On May 5, 2015, the plaintiff's counsel sent the defendant and Rossignol a letter notifying them of the judgment lien attaching the debt the defendant owed to Donald, and stating his intention "to try and work with you for the payment of said note . . . before we attempt on foreclosing on the judgment lien." On September 28, 2015, Rossignol, by way of a quitclaim deed, transferred title to the property back to the defendant for no consideration. The defendant did not otherwise respond to the plaintiff's demand that she make full payment on the note.

By complaint dated October 23, 2015, the plaintiff instituted the underlying action against the defendant. In count one of the complaint, the plaintiff sought payment on the note. In that count, she alleged that the court in her action against Donald "assigned the [note] to the [plaintiff] for payment." The plaintiff further alleged that she "is now the HOLDER of the negotiable instrument of the [note]," and described herself as the "court-ordered holder of the [note] . . . ." She sought, as a remedy, "money damages for the repayment of principal and interest under the terms of the [n]ote, plus attorney's fees, in accordance with the terms [of] the [note]."

In count two, the plaintiff incorporated her allegations from count one, including that the note was assigned to her and that she is the holder of the note. She sought to foreclose on the mortgage securing the note but did not seek to foreclose on the judgment lien, as suggested in her counsel's earlier letter.

The defendant moved to dismiss the action on the ground that the plaintiff lacks standing because she is not the holder of the note. In opposition to the motion, the plaintiff argued that she was entitled to enforce the note pursuant to the court's postjudgment order of attachment issued in her action against Donald. She

further argued that she did not need to have possession of the original note because it had been lost and its whereabouts were unknown. The court denied the motion to dismiss because "[t]here is an issue of fact as to whether the note was lost."

Thereafter, the defendant filed a motion to strike both counts of the complaint on the basis that the note required payment only if one of two events occurred—the defendant sold the property or she died. The defendant argued that because the complaint did not allege either of the events, the plaintiff failed to state a claim on which relief could be granted and both counts of the complaint should be stricken. In response, the plaintiff argued that the defendant's transfer of title to Rossignol triggered the defendant's obligation to pay the note in full and her failure to do so constituted an event of default under the note that supported both her action for payment on the note in count one of the complaint and her action to foreclose on the corresponding mortgage in count two. The court denied the motion to strike because, "[w]hen the express terms of the note are construed in a light most favorable to the plaintiff, the defendant's 'transfer' to her daughter could be considered an event of default. The plaintiff's complaint is legally sufficient."

The defendant then answered the complaint. Thereafter, she filed a revised answer, denying the essential allegations of the plaintiff's complaint and pleading several special defenses.[2]

After the parties engaged in discovery, including taking the depositions of the defendant, Donald, and the defendant's attorney in the dissolution action, who was involved in the drafting and execution of the note, the defendant moved for summary judgment on both counts of the plaintiff's complaint. In support of her motion, the defendant first argued that she had not defaulted on the note because payment was not due until she sold the property for value or died, neither of which had occurred. With respect to the "transferred" language relied on by the plaintiff, the defendant argued that "[t]he undisputed evidence makes clear that the term 'transferred' as used in [the note] means a transfer for value, and the life use deed [did] not constitute a transfer which renders the note due and payable." The defendant submitted various extrinsic evidence in support of her argument. First, she argued that the note should be read in light of the stipulation that she and Donald signed that was incorporated into their dissolution judgment from which the note resulted. The stipulation provided that the note "shall be payable on the first of the following events: the sale of [the property] by the wife and/or death of the wife." The stipulation makes no mention of any other event, including a transfer for no consideration, as triggering the defendant's obligation to pay any amounts due under the note.

Second, the defendant relied on her and Donald's deposition testimony. The defendant testified that her understanding of her repayment obligation under the note and judgment was that the note had to be paid when she sold the property or died, and that the transfer of title to Rossignol for no consideration as part of her estate planning, was not a sale. Similarly, Donald testified that the defendant was obligated to pay him under the note when she either sold the property or died. He further described the defendant's interest in the house under the dissolution judgment as a "life use" of the house.

Finally, the defendant relied on the deposition testimony of Attorney Timothy Sheehan, who represented the defendant in the dissolution proceeding, participated in the negotiation of the stipulation incorporated into the judgment of dissolution, and drafted the note. Sheehan testified that the reference in the note to the title of the property being transferred meant "[t]ransferred for value."

The defendant argued that it was appropriate for the court to consider extrinsic evidence because the note "is not integrated" or, alternatively, because the word " 'transferred' " in the note is ambiguous. The defendant reasoned that because all of the participants to the negotiation and drafting of the note[3] had the same understanding as to its meaning and that meaning was confirmed by the judgment of dissolution, there was no factual basis to conclude that the defendant's action in quitclaiming title to the property to Rossignol, for no consideration, while retaining life use of the property, triggered her payment obligation under the note.

Alternatively, the defendant argued that the plaintiff did not have standing to enforce the note or to foreclose on the mortgage. As to enforcement of the note, the defendant argued that the plaintiff admitted that the note is not payable to the plaintiff and that the plaintiff has never been in possession of the note. Consequently, according to the defendant, the plaintiff is neither a holder of the note nor a nonholder in possession of the note, as defined in General Statutes § 42a-3-301, and she is not entitled to enforce it. The defendant further argued that the plaintiff could not rely on General Statutes § 42a-3-309, which provides for the enforcement of lost, destroyed or stolen instruments, because she was not in possession of the note at the time it was lost, destroyed or stolen.[4] As to the plaintiff's efforts to foreclose on Donald's mortgage on the property, the defendant argued that the mortgage was never assigned to the plaintiff, and, therefore, she lacked standing to foreclose on it.

In opposition to the defendant's motion for summary judgment, the plaintiff argued that the language in the note is clear and unambiguous in requiring full payment

of the amounts due thereunder if " 'title to [the] property is transferred.' " She further argued that the life use deed constituted a transfer of title to the property from the defendant to Rossignol, triggering the defendant's payment obligation under the note. The plaintiff also argued that the court should not consider Sheehan's deposition testimony regarding the parties' intent in using the "transferred" language because the language is not ambiguous and reliance on Sheehan's testimony would violate the parol evidence rule, as acceptance of Sheehan's interpretation would vary or contradict the terms of the note.

As to the defendant's standing arguments, the plaintiff argued that, although she did not possess the original note, she has a copy of it and has standing, as the successor to Donald's rights in the note, to enforce it. The plaintiff did not address the defendant's argument that the she lacks standing to foreclose on the mortgage because it had never been assigned to her.

In ruling on the defendant's motion for summary judgment, the trial court did not address the standing arguments made by the defendant. Instead, the court resolved the motion on the basis of its interpretation of the "transferred" language in the note.[5] The court held that the plaintiff's reliance on a single provision in the note was misplaced because "[t]he entire note must be read in light of the judgment pursuant to which the note was executed." The court also considered the defendant's and Donald's deposition testimony and concluded: "It is clear, based on the plain language of the judgment, that Donald and [the defendant] intended for payment to become due only in the event of either the sale of the property or the death of [the defendant]. . . . Moreover, both parties to the note have confirmed their intent and understanding that the note would become due during the defendant's lifetime only in the event of a transfer for value. . . . The extrinsic evidence makes it clear that neither the maker of the note nor the payee understood that the word 'transfer' used in the note meant anything other than a transfer for value, since without value, the defendant would have no money to pay the payee." Consequently, the court rendered summary judgment in favor of the defendant on both counts of the plaintiff's complaint. Additional facts will be set forth as necessary.

In this appeal, the plaintiff claims that the court erred in its analysis of the note. In particular, she claims, as she did before the trial court, that the language of the note is clear and unambiguous in linking the defendant's payment obligation to any transfer by her of the title to the property and that the court erred in relying on extrinsic evidence to reach an interpretation of the language that varied or contradicted that clear and unambiguous meaning. Furthermore, even though the trial court did not mention Sheehan's testimony in its memo-

randum of decision rendering summary judgment, the plaintiff claims that such testimony should have been stricken and not considered by the court. Finally, although the trial court did not address standing or the plaintiff's right to enforce the note or to foreclose on the mortgage, the plaintiff argues that she has such rights.

In response, the defendant argues that the trial court properly construed the note in light of the undisputed evidence of the intent of the defendant and Donald when they entered into the stipulation that resulted in the defendant executing the note and mortgage. Alternatively, the defendant argues that the plaintiff lacks standing to enforce the note and to foreclose on the mortgage. We agree with the defendant's alternative standing arguments and, therefore, do not reach the question of how the note should be construed.

Although the trial court did not address the defendant's arguments that the plaintiff lacks standing to pursue her claims, because the question of standing implicates the trial court's subject matter jurisdiction, we address those arguments first.[6]

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of this question of law is plenary." (Citations omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 318, 71 A.3d 492 (2013).

In *J.E. Robert Co.*, our Supreme Court analyzed the plaintiff's right to enforce a promissory note and to foreclose on a mortgage securing the note as a question of standing. Id., 319. In doing so, the court noted: "A plaintiff's right to enforce a promissory note may be established under the [Uniform Commercial Code (UCC) as adopted in General Statutes § 42a-1-101 et seq.]." Id. "Under the UCC, a [p]erson entitled to enforce an instrument means [inter alia] (i) the holder of the instrument, [or] (ii) a nonholder in possession of the instrument who has the rights of a holder . . . . A person may be a person entitled to enforce the instrument *even though the person is not the owner of the instrument* . . . . General Statutes § 42a-3-301. The UCC's official comment underscores that a person entitled to enforce an instrument . . . *is not limited to holders.* . . . *A nonholder in possession of an instrument includes a person that acquired rights of a holder . . . under* [*General Statutes § 42a-3-203 (a)*]." (Emphasis in original; footnote omitted; internal quotation marks omitted.) *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 319–20.

In addition, pursuant to § 42a-3-301 (iii), " '[p]erson entitled to enforce' an instrument" includes "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 . . . ." Section 42a-3-309 (a) provides: "A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, *and* (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process." (Emphasis added.) Finally, General Statutes § 42a-1-201 (b) (21) defines a " '[h]older' " of a promissory note as: "(A) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; (B) The person in possession of a negotiable tangible document of title if the goods are deliverable either to bearer or to the order of the person in possession; or (C) The person in control of a negotiable electronic document of title." Consequently, someone who is not in possession of the original note can be neither a holder nor a nonholder in possession. See *Seven Oaks Enterprises, L.P.* v. *DeVito*, 185 Conn. App. 534, 547, 198 A.3d 88, cert. denied, 330 Conn. 953, 197 A.3d 893 (2018).

The plaintiff concedes that she has never had possession of the original note. For this reason, the defendant argues, the plaintiff has no right to enforce the note as a holder or nonholder in possession pursuant to § 42a-3-301 (i) or (ii). The plaintiff argues that, even though she never possessed the note, she acquired the holder's rights and became the person entitled to enforce the note when the court in her action against Donald issued a postjudgment order of *attachment and garnishment* of the note in her favor. In support of her argument, the plaintiff relies on the official commentary to § 42a-3-301, which states, inter alia, that a " '[p]erson entitled to enforce' an instrument . . . also includes any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights." Conn. Gen. Stat. Ann. (West 2009) § 42a-3-301, comment, p. 522. We are not persuaded.

The UCC and the official commentary both clearly describe how someone not in physical possession of a note can enforce it. Section 42a-3-309 (a) explicitly provides the circumstances under which "[a] person not in possession of an instrument is entitled to enforce the instrument . . . ." It is not sufficient for a person to claim merely that she is the successor to the rights of the holder. In fact, § 42a-3-309 (a) (i) specifically

provides that the person seeking to enforce the instrument must show that she "was in possession of the instrument and entitled to enforce it when loss of possession occurred . . . ." In addition, the official commentary to § 42a-3-301, on which the plaintiff's argument is built, specifically references the right to enforce a lost or stolen instrument pursuant to § 42a-3-309. The plaintiff's argument that the reference in the official commentary to one who is "a successor to the holder or otherwise acquires the holder's rights"; Conn. Gen. Stat. Ann. (West 2009) § 42a-3-301, comment, p. 522; includes a person who never had possession of the instrument is illogical and contrary to the plain language of § 42a-3-309.

In fact, this court recently rejected a nearly identical argument in *Seven Oaks Enterprises*, *L.P.* v. *DeVito*, supra, 185 Conn. App. 552–54. In that case, Seven Oaks Enterprises, L.P. (SOE) sold a limited liability company to the defendant, who, as part of the purchase, executed a note in favor of SOE for $1.325 million. Id., 538. After the sale, SOE transferred and assigned the note to a related company, Seven Oaks Management Company (SOM). Id., 539, 543. At the time of the transfer to SOM, SOE no longer had possession of the original note from the defendant, and SOM never was in possession of the note. Id., 554. SOE and SOM later brought an action against the defendant. Id., 539. In that action, SOM claimed that the defendant had breached the promissory note by failing to pay the amounts due thereunder. Id. The defendant argued that SOM had no right to enforce the note because it never possessed the note, as the note was lost while in SOE's possession and before any assignment to SOM. Id., 537. The case was tried to a jury, which returned a verdict in favor of SOM on its claim under the promissory note. Id., 539. "The jury indicated in its answers to interrogatories that it had found that SOE and the defendant originally had been the parties to the note, that SOE possessed the note when it was lost, that the note nonetheless had effectively been assigned to SOM, and that the defendant failed to make payments on the note." Id., 541–42. The defendant filed motions to set aside the verdict and for judgment notwithstanding the verdict, both of which the trial court denied. Id., 539–40.

On appeal, this court held that the trial court erred in denying the motions to set aside the verdict and for judgment notwithstanding the verdict. Id., 554. After thoroughly reviewing the applicable sections of the UCC and case law both in Connecticut and in other states applying those sections to similar circumstances, we concluded: "[T]he application of § 42a-3-301, in the circumstances of the present case, leads to the conclusion that SOM is entitled to enforce the note only if it satisfies the standards stated in § 42a-3-309. Subsection (a) of § 42a-3-309, in turn, provides that [a] *person* not in possession of an instrument is entitled to enforce

the instrument if (i) *the person* was in possession of the instrument and entitled to enforce it when loss of possession occurred . . . . The only logical construction of the statutory language compels the conclusion that the only person who can enforce the note is the person in possession of the note when it was lost." (Emphasis in original; internal quotation marks omitted.) Id., 551–52. We explicitly rejected SOM's argument that it could enforce the note as an assignee even though it was not in possession of the note, because the clear language of the statute precluded such a result. Id., 552. We similarly rejected SOM's argument that the common law of assignments supplements the UCC and creates an alternative basis for an assignee not in possession of a note to enforce it, concluding that "[b]ecause § 42a-3-309 is directly applicable to the situation underlying the present case, the common law of assignments does not displace its clear provisions." Id., 552–53.

The plaintiff's argument in the present case, that she is entitled to enforce the note as Donald's successor pursuant to the order of attachment and garnishment issued by the court in her action against Donald, is not materially different from SOM's argument in *Seven Oaks Enterprises, L.P.* For the same reason that we rejected the argument in that case, we reject it here.[7] Thus, the plaintiff has standing to enforce the note only if she meets the requirements of § 42a-3-309.

The defendant argues that the plaintiff indisputably cannot meet the requirements of § 42a-3-309 because the whereabouts of the note appear to be unknown and the plaintiff was not in possession of the note when it was lost. In response, the plaintiff details the efforts she made to secure the original note and then argues that, although she never possessed the original note, she has a copy of the note and the copy is sufficient to confer standing on her. The plaintiff's argument is without merit.

The wording of § 42a-3-309 is clear and unambiguous. In order to enforce a lost note, the person seeking to enforce it must have had possession of it when it was lost. Furthermore, that was this court's holding in *Seven Oaks Enterprises, L.P.* See *Seven Oaks Enterprises, L.P.* v. *DeVito*, supra, 185 Conn. App. 551–52. The plaintiff's efforts to secure possession of the original note or her possession of a copy of the note are simply irrelevant to whether she has complied with the statutory requirements. The plaintiff, in fact, recognized this during the postjudgment proceeding in her action against Donald. When the court stated that Donald was to turn over *a copy* of the note, the plaintiff's counsel responded: "Again, that would be the original of the . . . note. *I can only execute against the original.*" (Emphasis added.)

Having been unable to secure the original note, the plaintiff cites a number of cases that purportedly sup-

port her new contention that she never needed possession of the original note to enforce it. Those cases provide her with little support. In *Guaranty Bank & Trust Co.* v. *Dowling*, 4 Conn. App. 376, 381–82, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985), this court affirmed the judgment in favor of the plaintiff on a promissory note that had been lost and was not in the plaintiff's possession when it was lost. However, the court did so under General Statutes (Rev. to 1985) § 42a-3-804, which, in 1991, was repealed and replaced by § 42a-3-309. General Statutes (Rev. to 1985) § 42a-3-804 provides in relevant part: "The owner of an instrument which is lost, whether by destruction, theft or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. . . ." See *Guaranty Bank & Trust Co.* v. *Dowling*, supra, 381. Unlike § 42a-3-309, General Statutes (Rev. to 1985) § 42a-3-804 did not require that the person seeking to enforce a lost note have possession of it when it was lost. Id., 381–82. Thus, *Guaranty Bank & Trust Co.* is inapposite to the present case.

The other cases relied on by the plaintiff involved foreclosures and not actions to enforce the note. As this court explained in *Seven Oaks Enterprises, L.P.*, a foreclosure action is different from an action to enforce a note. See *Seven Oaks Enterprises, L.P.* v. *DeVito*, supra, 185 Conn. App. 547–48. "[O]ur Supreme Court considered the language of § 42a-3-309 (a) in *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 759–60, 680 A.2d 301 (1996). In that case, the defendant contended that the plaintiff could not obtain a judgment of strict foreclosure under §§ 42a-3-301 and 42a-3-309. . . . Specifically, the defendant claimed that because the plaintiff never proved it possessed the original note, it could not satisfy the requirement of § 42a-3-309 to show possession to enforce a lost note. . . . Our Supreme Court rejected this claim, noting that [i]t is well established . . . that the [mortgagee] is entitled to pursue its remedy at law on the notes, or to pursue its remedy in equity upon the mortgage, or to pursue both. . . . The defendant did not dispute that it executed the note and mortgage and that the debt existed. . . . The plaintiff chose its equitable remedy, foreclosure of the mortgage. . . .

"In deciding the case, however, our Supreme Court observed that because the plaintiff had chosen to pursue the equitable action of foreclosure of the mortgage, rather than a legal action on the note, the fact that [the plaintiff] never possessed the lost promissory note [was] not fatal to its foreclosure of the mortgage. . . . [W]hatever restrictions §§ 42a-3-301 and 42a-3-309 might put upon the enforcement of personal liability based solely upon a lost note, they [did] not prohibit [the plaintiff] from pursuing an action of foreclosure to

enforce the terms of the mortgage." (Citations omitted; internal quotation marks omitted.) *Seven Oaks Enterprises, L.P.* v. *DeVito*, supra, 185 Conn. App. 547–48.

Consequently, the fact that a party, who is not in possession of the note evidencing the debt underlying a mortgage, may be able to foreclose on that mortgage, does not lead to the conclusion that the party has standing to enforce the note. In fact, we specifically have rejected such a conclusion. See id., 547–48, 554. In the present case, the plaintiff, never having possessed the original note, lacks standing to enforce it. For this reason, the trial court should have dismissed count one of the plaintiff's complaint because it lacked subject matter jurisdiction to consider the plaintiff's cause of action.

As noted, however, this conclusion as to count one does not necessarily mean that the plaintiff lacks standing to assert the foreclosure claim in count two of her complaint. Possession of the original note underlying the mortgage is not a necessary prerequisite for that claim because "[t]he mortgage secures the indebtedness itself, not the written evidence of it." (Internal quotation marks omitted.) *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 238 Conn. 759. For this reason, "[t]he loss of the note . . . does not preclude proof of the debt by other evidence. A . . . note is not a debt; it is only primary evidence of a debt; and where this is lost, impaired or destroyed bona fide, it may be supplied by secondary evidence. . . . The loss of a . . . note alters not the rights of the owner, but merely renders secondary evidence necessary and proper." (Citation omitted; internal quotation marks omitted.) Id., 760. In *New England Savings Bank*, although the plaintiff did not possess the original promissory note, it was able to prove its ownership of the debt underlying the mortgage through secondary evidence, in particular, the assignments of the note and the mortgage that secured the debt. Id.

In the present case, as the defendant correctly notes, there was no assignment of the mortgage to the plaintiff. Nor does the plaintiff base her foreclosure claim on anything other than the note. Specifically, in her complaint, the plaintiff based her right to foreclose on the mortgage on her status as the assignee and holder of the note. Furthermore, the note, and its purported assignment to her, is the only evidence she offered the court in support of her claim that she owned the debt secured by the mortgage.

Yet, she never possessed the note and the note, in fact, never was assigned to her. See footnote 7 of this opinion. Furthermore, under General Statutes § 49-17, a party has no standing to foreclose on a mortgage without ever having been assigned the debt underlying the mortgage; § 49-17 allows the holder of the debt to foreclosure on property without having been assigned

the mortgage, but it does not allow the converse, indicating that the legislature did not intend to permit the holder of the mortgage, without having been assigned the debt, to foreclose on the mortgage. See *Fleet National Bank* v. *Nazareth*, 75 Conn. App. 791, 794–95, 818 A.2d 69 (2003). In the present case, at the time she brought this action, the plaintiff, at most, had an attachment of the note and the debt underlying the mortgage.[8] A postjudgment attachment though is not self-executing. The plaintiff recognized as much when her counsel stated during the postjudgment hearing in her case against Donald that the plaintiff needed possession of the original note "[s]o when the trigger of the contingency occurs, *the money gets paid and we hold on to it.*" (Emphasis added.) Counsel's statement was consistent with the court's statement just moments earlier in the hearing that counsel could hold or attach Donald's assets but could not execute on them until the plaintiff had secured a final judgment against Donald.

General Statutes § 52-356a sets forth in great detail the steps a judgment creditor must take to execute on the assets of a judgment debtor, including levying any debt owed to the judgment debtor by a third party.[9] The plaintiff does not claim that she took any of the necessary steps to levy on the debt she claims the defendant owed. Under these circumstances, the plaintiff, unlike the plaintiff in *New England Savings Bank*, has failed to produce any necessary and proper secondary evidence to create a genuine issue of fact that she is the owner of the debt underlying the mortgage. In the absence of such evidence, there is no basis to conclude that the plaintiff has standing to foreclose on the mortgage.[10]

In her reply brief, without providing any analysis whatsoever, the plaintiff dismisses the significance of the statutes relied on by the defendant and discussed previously in this opinion by contending that she has standing pursuant to General Statutes § 52-329 or the "court's common-law powers of equity." We are not persuaded.

Section 52-329 provides for a garnishment of a debt as a type of prejudgment remedy.[11] General Statutes § 52-381 sets forth the statutory procedure for executing on such a garnishment, including requiring the plaintiff to "direct the officer serving the [execution] to make demand of such garnishee for the effects of the defendant in his hands, and for the payment of the debt due the defendant, and such garnishee shall pay such debt or produce such effects, to be taken and applied on such execution. . . ." Pursuant to § 52-381, the plaintiff may also institute a scire facias[12] action to recover the property that is the subject of the garnishment. It is undisputed that the plaintiff neither pursued the statutory procedure to execute on the garnishment nor

brought a scire facias action against the defendant.

Furthermore, the plaintiff fails to explain what common-law powers of equity would permit a court, on the facts of this case, to grant an ownership interest in a debt without following the required statutory procedures. Connecticut has had statutes regulating the garnishment of property and the execution of such property postjudgment since 1726. See *Hayes* v. *Weisman*, 97 Conn. 387, 394–98, 116 A. 878 (1922). Consequently, our Supreme Court stated long ago that "[t]he proceeding in favor of a creditor to attach and appropriate the debt of a third person due the debtor, is given by statute." *Day* v. *Welles*, 31 Conn. 344, 349 (1863). Although our Supreme Court has recognized that in certain limited circumstances a judgment creditor may bring a creditor's bill in equity "to enforce the payment of a debt out of property of a debtor under circumstances which impede or render impossible the collection of the debt by the ordinary process of execution . . . [t]he . . . requirement for the maintenance of such a bill is that the plaintiff must not have an adequate remedy at law." (Citations omitted.) *Burchett* v. *Roncari*, 181 Conn. 125, 128, 434 A.2d 941 (1980). There is little question that the plaintiff has an adequate remedy at law through our garnishment and execution statutes. Finally, as noted previously in this opinion, the "garnishment remedy" issued by the court was no more than an attachment of the note. It did not *assign the debt* to the plaintiff. The attachment of the note, assuming the validity of the attachment, without more, does not give the plaintiff any right to pursue a judgment on the note or to foreclose on the mortgage.

For these reasons, the trial court lacked subject matter jurisdiction to consider count two of the plaintiff's complaint, and that count, as well, must be dismissed.

The form of the judgment is improper; the judgment is reversed and the case is remanded with direction to render a judgment of dismissal for lack of subject matter jurisdiction.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] On December 1, 2010, Donald and the defendant executed a document titled "Divorce Decree Amendment" (amendment) by which Donald released the 2 percent interest due under the note and which provided that no further interest would accrue on the note. Otherwise, the amendment confirmed the defendant's obligation to pay the note according to its terms. On January 3, 2014, the parties filed a joint motion to open and modify their dissolution judgment to incorporate the amendment, which the court granted on the same day.

[2] The defendant also pleaded a four count counterclaim in which she seeks compensatory, statutory, and punitive damages and attorney's fees. The counterclaim is still pending in the trial court and not at issue in this appeal, which was taken from a final judgment. See Practice Book § 61-2 ("judgment . . . rendered on an entire complaint . . . shall constitute a final judgment"); *Nationwide Mutual Ins. Co.* v. *Pasiak*, 327 Conn. 225, 233–34 n.6, 173 A.3d 888 (2017) ("[a]lthough the defendant's counterclaim remains pending before the trial court, the decision on the declaratory judgment action was an appealable final judgment because the court's deci-

sion disposed of all counts of the plaintiff's complaint").

[3] Donald's attorney during the dissolution proceedings, Charles G. Karanian, also participated in the negotiations that resulted in the judgment of dissolution and note. He died on March 1, 2016. Neither party submitted to the court any evidence regarding Karanian's understanding of the "transferred" language at issue.

[4] The location of the original note appears to be unknown.

[5] Because standing implicates the court's subject matter jurisdiction, the court should have addressed the defendant's standing arguments before turning to the question of whether there was a genuine issue of material fact as to the defendant's alleged breach of her payment obligation under the note. See *418 Meadow Street Associates, LLC* v. *One Solution Services, LLC*, 127 Conn. App. 711, 716, 15 A.3d 1140 (2011) ("Once the question of lack of jurisdiction of a court is raised, it must be disposed of no matter in what form it is presented. . . . Additionally, a party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim." [Citation omitted; internal quotation marks omitted.]).

[6] The plaintiff notes in her reply brief: "Successor counsel is not sure why the enforceability issue was raised on appeal at all. It did not form the basis of the judgment of the trial court, nor was it identified as an alternative ground to affirm." Counsel's apparent confusion is puzzling given that the plaintiff's original appellate counsel extensively briefed the issue in the plaintiff's principal appellate brief, the defendant clearly raised the issue of the plaintiff's standing to enforce the note and to foreclose on the corresponding mortgage in her motion for summary judgment, and issues impacting subject matter jurisdiction, such as standing, can be raised at any time.

[7] The plaintiff's argument in this case suffers from another infirmity that did not confront SOM in *Seven Oaks Enterprises, L.P.* In that case, there was no dispute that SOE had assigned the promissory note to SOM and that if SOM had had possession of the note, it could have enforced it. In the present case, the plaintiff's right to enforce the note, even if she had possession of it, at best, is questionable. The note was never assigned to her. She was granted, at most, only a postjudgment remedy of attachment of the note in her action against Donald. Although the court's order stated that the plaintiff could "garnish" the note, the transcript of the hearing makes clear that the court intended only that the plaintiff would hold the note and Donald's other assets as security for the judgment. The court made clear that the plaintiff could not convert those assets to her own use, but would have to execute on them if final judgment was rendered in her favor. Even the plaintiff's counsel acknowledged that he would have "to execute" on the original note. There is no evidence that the plaintiff ever sought an execution on the note.

[8] In *Winslow* v. *Fletcher*, 53 Conn. 390, 4 A. 250 (1886), our Supreme Court explained that stock certificates are evidence "that the person therein named possesses those rights and is subject to those duties, but it is not in law the equivalent of those rights and duties. They are muniments of title, but not the title itself; much less the real property. While these certificates are in themselves valuable for some purposes, and to some extent may properly be regarded as property . . . yet they are distinct from the holder's interest in the capital stock of the corporation, and are not goods and effects within the meaning of the statute relating to foreign attachment. *They are no more subject to an attachment or a trustee process than a promissory note.* The debt is subject to attachment, but the note itself, which is simply evidence of the debt, is not. So with stock. That may be attached, but the certificate cannot be." (Citation omitted; emphasis added.) Id., 395–96; see B. Matson, Creditor Process Against Negotiable Notes: The Case for a New UCC § 3-420, 24 Wm. & Mary L. Rev. 503, 530 (1983) ("the historical treatment of promissory notes parallels that of investment securities, [and] the [UCC] and a majority of jurisdictions still do not provide for the seizure of negotiable notes"); see also *Grosvenor* v. *Farmers & Mechanics Bank*, 13 Conn. 104, 108 (1839) (promissory note cannot be attached as goods and effects under foreign attachment statute because they are choses in action, which cannot be sold on execution). But see General Statutes § 52-341 ("[w]hen a debt evidenced by a negotiable promissory note has been attached by process of foreign attachment and the defendant has had actual notice thereof, he shall not negotiate or transfer such note during the continuance of the attachment lien").

"Despite the early English characterization of a note as tangible property, most states enacted execution and enforcement of money judgment provisions that codified [common-law] conceptions of notes as intangible prop-

erty not subject to seizure. Moreover, statutes that conflict with this [common-law] notion have been construed narrowly. The [common-law] approach to the levying on and seizure of negotiable promissory notes still prevails when the execution statutes are silent on the nature of these notes. A majority of jurisdictions follow the common law through express statutory enactments, judicial precedent, or an absence of any contrary law." (Footnotes omitted.) B. Matson, supra, 24 Wm. & Mary L. Rev. 509–10, citing, inter alia, *Grosvenor* v. *Farmers & Mechanics Bank*, supra, 13 Conn. 104. In the present case, the issue of whether the plaintiff legally could have an attachment or garnishment on the note itself is left for another day.

[9] General Statutes § 52-356a provides in relevant part: "(a) Procedure. Levying officer's responsibilities. (1) On application of a judgment creditor or a judgment creditor's attorney, stating that a judgment remains unsatisfied and the amount due thereon, and subject to the expiration of any stay of enforcement and expiration of any right of appeal, the clerk of the court in which the money judgment was rendered shall issue an execution pursuant to this section against the nonexempt personal property of the judgment debtor other than debts due from a banking institution or earnings. . . .

"(2) The property execution shall require a proper levying officer to enforce the money judgment and shall state the names and last-known addresses of the judgment creditor and judgment debtor, the court in which and the date on which the money judgment was rendered, the original amount of the money judgment and the amount due thereon, and any information which the judgment creditor considers necessary or appropriate to identify the judgment debtor. The property execution shall notify any person served therewith that the judgment debtor's nonexempt personal property is subject to levy, seizure and sale by the levying officer pursuant to the execution and, if the judgment debtor is a natural person, shall be accompanied by a notice of judgment debtor rights as prescribed by section 52-361b and a notice to any third person of the manner, as prescribed by subdivision (4) of this subsection, for complying with the execution.

"(3) A property execution shall be returned to court within four months after issuance. The untimely return of a property execution more than four months after issuance shall not of itself invalidate any otherwise valid levy made during the four-month period.

"(4) The levying officer shall personally serve a copy of the execution on the judgment debtor and make demand for payment by the judgment debtor of all sums due under the money judgment. On failure of the judgment debtor to make immediate payment, the levying officer shall levy on nonexempt personal property of the judgment debtor, other than debts due from a banking institution or earnings, sufficient to satisfy the judgment, as follows . . .

"(C) With respect to a judgment debtor who is a natural person, if such personal property, including any debt owed, is in the possession of a third person, the levying officer shall serve that person with two copies of the execution, required notices and claim forms. On receipt of such papers, the third person shall forthwith mail a copy thereof postage prepaid to the judgment debtor at the last-known address of record with the third person and shall withhold delivery of the property or payment of the debt due to the levying officer or any other person for twenty days. On expiration of the twenty days, the third person shall forthwith deliver the property or pay the debt to the levying officer provided (i) if an exemption claim has been filed in accordance with subsection (d) of section 52-361b, the property shall continue to be withheld subject to determination of the claim, and (ii) if a debt is not yet payable, payment shall be made when the debt matures if within four months after issuance of the execution.

"(5) Levy under this section on property held by, or a debt due from, a third person shall bar an action for such property against the third person provided the third person acted in compliance with the execution.

"(6) If the levying officer cannot remove any property on which he seeks to levy without the danger of injury thereto, he may levy on and take possession of the property by posting on or adjacent to the property a conspicuous notice of the levy.

"(7) Subject to the provisions of section 52-328, if the property to be executed against is already subject to an attachment, garnishment or judgment lien of the judgment creditor as security for that judgment, the priority of the execution shall hold from the date of perfecting of the attachment, garnishment or other lien. A sale pursuant to the execution forecloses any interest acquired as a result of the attachment, garnishment or judgment lien. . . ."

[10] Because the plaintiff sought to foreclose on only the mortgage and not its judgment lien, we do not consider the validity or enforceability of the judgment lien.

[11] We note that there is nothing in the record to show that the plaintiff complied with the service requirements of § 52-329, further calling into question the validity of her garnishment.

[12] "The writ of scire facias is generally used to collect other debts owed to the judgment debtor. This writ may not be used, however, unless the debt has first been garnisheed. . . . It is rather obvious that these ancient writs of execution have become so encrusted with procedural barnacles that frequently they are not suited to the needs of modern society." (Citations omitted.) *Burchett* v. *Roncari*, 181 Conn. 125, 127, 434 A.2d 941 (1980). "The plaintiff can summon the garnishee before the court to show cause why he should not pay the garnishment only by obtaining judgment and then seeking to collect the debt for which the judgment has been rendered through a writ of scire facias. . . . The whole purpose of scire facias is to give the garnishee an opportunity to defend. Under the statute, in an action of scire facias in consummation of an action begun by process of foreign attachment, there really can be no issue reaching the merits of the action other than the one whether or not the defendant in scire facias was indebted to the defendant in the original action at the time of service." (Citations omitted; internal quotation marks omitted.) *Vidal Realtors of Westport, Inc.* v. *Harry Bennett & Associates, Inc.*, 1 Conn. App. 291, 295, 471 A.2d 658, cert. denied, 192 Conn. 804, 472 A.2d 1284 (1984).